JOHN A. & LUCY A. MASSEY, BY GUARDIAN, v. FREDERICK A. MASSEY.

A letter written by a trustee to the *cestui que trust*, during the existence of the trust relation and acknowledging it, is admissible in evidence in a controversy for the property, between the *cestui que trust* and one to whom the trustee has since conveyed the property; but in this case the latter was a volunteer.

The testimony of the witness (as to the declarations of an alleged trustee who was still living) was more strongly corroborated by other evidence in this case,

than in the case of Mead v. Randolph (8 Tex. R. 191,) where it was held sufficient (to establish the trust.)

Appeal from Dallas. Tried below before the Hon. Nat. M. Burford.

Some time during the year 1851, the defendant in error, Frederick A. Massey, who was plaintiff in the Court below, gave to John M. Thomas, one of the defendants in the Court below, a bill of sale of a negro woman named Catharine and her child, and two boys named Will and Sandy. On the third day of January, 1852, Jefferson Weatherford conveyed to said John M. Thomas eight hundred and twenty-nine acres of land, in two adjoining tracts, in Dallas county, purporting to be in consideration of eight hundred and twenty-nine dollars, but the real consideration was the said negro woman Catharine and her child. On the 7th day of May, 1853, the said J. M. Thomas, by deed reciting the consideration of $15,000, in hand paid by his wife Lucy D. Thomas, conveyed to her certain property among which was the above mentioned land, described as "one tract lying in Dallas county, on the Cedar Mountain, containing 829 acres," and the boys Will and Sandy. On the 24th of January, 1856, the said John M. Thomas and his wife Lucy D. Thomas, by deed reciting the consideration of $100 to them in hand paid, and love and affection, conveyed said land and slaves, Will and Sandy, to John A. Massey and Lucy A. Massey, children of Frederick A. Massey (the plaintiff,) and Lucy A. Massey, his wife, then deceased, and grandchildren of said Lucy D. Thomas.

On the 26th of May, 1856, this suit was commenced by the said Frederick A. Massey, alleging in substance that the bill of sale of the slaves had been made by him to Thomas in order to enable Thomas to purchase said land for him, Massey, and for no other consideration; that the said land was accordingly purchased by said Thomas in trust for plaintiff, and the said slaves Will and Sandy remained in plaintiff's possession; that the deeds from Thomas to his wife and from the latter to the other defendants, John A. and Lucy A. Massey, were made without consideration and were designed to defraud plaintiff; that said Lucy A. Thomas had notice, &c.; prayer that the deeds complained of be cancelled, and the title to the said land and negroes be confirmed to the plaintiff.

Defendant John A. Thomas answered, admitting the facts as

alleged by plaintiff, except as to his intent to defraud the plaintiff, but "that it was the intention of the defendants to reconvey the land and negroes to plaintiff, but on the death of said plaintiff's wife, the defendants thought it would be acceptable to convey said property to plaintiff's children ; but if the Court conceives that plaintiff in equity owns said property, and should control the same, this defendant will present no objection, but prays that he may be dismissed with all his costs," &c.

Lucy D. Thomas failed to answer. The other defendants John A. and Lucy A. Massey, being minors, answered by guardian *ad litem*, denying all and singular, and claiming also the boys Will and Sandy, as their property.

In addition to the facts above stated, about which there was no controversy, the evidence was as follows : That the plaintiff at the time of the conveyance of the slaves by him to Thomas and the purchase of the land from Weatherford, lived with the family of Mr. Thomas ; a witness to the deed from plaintiff to Thomas said he saw no money paid for the negroes by Thomas to Massey ; Massey afterwards took charge of Thomas' farm for twelve months, and kept possession of the negroes, except the two sold to Weatherford ; Thomas and wife moved away out of the country, and Massey kept possession of the negroes Will and Sandy and still has them ; that before the bill of sale from Massey to Thomas, said negroes were known as the property of the former ; Massey's wife died about January, 1855. John F. Thomas, a witness for plaintiff, testified that a letter shown to him on the stand was written by John M. Thomas, the defendant, that witness was present when it was written; that it was written by said John M., when he was on his way with his wife back to the old States about the     day of     1854, and that witness at the request of said John M., conveyed said letter to the plaintiff in Ellis county. Plaintiff then introduced the letter in evidence, as follows : Centreville, Texas. I am on my way to Mississippi and Tennessee. To sum up all things in short, you both must do the best you can in all things. For me to particularize all things, I cannot do it. Cousin Franklin can tell you more than I can write you. We regret to leave, but think it best. How long we will be gone I cannot tell. We will write often. We will take water at Houston, and by the way of Galveston. I have nothing more to write. If I never see you again, the mountain land, 829 acres, and negroes Will and Sandy are your own property. (Signed) J. M. Thomas.

(It appeared from the original manuscript that the writer was illiterate.—REPS.)

Plaintiff then continued the examination of said witness, and proved by him, that the land referred to in said letter was the land in suit; that Lucy D. Thomas, wife of said John M., was present when said letter was written; that he heard both of them say that said land and the negroes Sandy and Will belonged to plaintiff, that they had never paid any consideration for the negroes or the land, and for fear something might happen to them while they were gone, they would write a letter to plaintiff, showing that the property was his; that said John M. and wife afterwards returned, and finally settled at Austin; that plaintiff's wife, who was the daughter of said Lucy D. Thomas, died in the year 1855; that said Lucy D. Thomas came to Ellis county in the winter of the year 1856 on business of her own; that witness was frequently with her assisting in her business; that he then heard her frequently say that said negroes Sandy and Will were the property of plaintiff, that plaintiff's negro woman Catharine and child were sold for said land, and that said land belonged to him, and that she would make him a deed to it; that she had a deed to said land from her to plaintiff written out; that when she was about to return to Austin, plaintiff refused to let her take with her another negro woman belonging to plaintiff's children; that she then got angry, refused to deed said land to plaintiff, and caused the deed of gift aforesaid to be made from her and her husband to plaintiff's children; witness has known plaintiff in Ellis county for about two years, and states that plaintiff in the mean time has had possession of said negroes Will and Sandy and claimed said land.

Plaintiff read the answer of defendant J. M. Thomas. Defendants offered no evidence. Verdict and judgment for the plaintiff. Motion by John A. and Lucy A. Massey for new trial overruled, &c. The only error assigned was that the Court overruled the motion for a new trial.

*E. C. McKinzie*, for appellants. It has often been decided by this Court, that the parol testimony of a single witness swearing to the admissions of an alleged trustee, is not sufficient to establish a trust concerning lands. (Neill v. Keese, 5 Tex. R. 23; Miller v. Thatcher, 9 Id. 482; Hall v. Layton, 16 Id. 262.)

*J. W. Ferris*, for appellee. Resulting trusts and the admis-

sibility of parol evidence to establish them, affirmed by this Court. (Neill v. Keese, 5 Tex. R. 29; Mead v. Randolph, 8 Id. 191; 9 Id. 482; 10 Id. 159.)

The declarations of Thomas and wife are strongly and fully sustained by the circumstances and facts of the case.

WHEELER, J. The verdict does not rest upon the uncorroborated testimony of a single witness deposing to the admissions of the trustee. The testimony of the witness is strongly corroborated by other evidence in the case. The answer of the defendant, Thomas, expressly admits the trust. And however little weight that may be entitled to, having been made after the deed of gift to the other defendants, it cannot be doubted that the letter written by him to the plaintiff, and fully concurred in by his wife, before they made the deed, and when they held the legal title, is evidence strongly corroborative of the testimony of the witness. It was written and delivered for the purpose of affording evidence of the trust, and does admit it in express terms. Besides, the making of the deed of gift to the children of the plaintiff is consistent with and favors the conclusion that the consideration passed from him. The testimony of more witnesses than one shows that it did; that he owned the slaves in question, and that the land was purchased with his property and means. He never parted with the possession; and the evidence fully and satisfactorily establishes, beyond a doubt, that he was the true and equitable owner of the property, although the legal title was in another. The testimony of the witness was more strongly corroborated by other evidence in this case than in the case of Mead v. Randolph, (8 Tex. R. 191,) where it was held sufficient. The trust was fully established by evidence amply sufficient to warrant the verdict. The judgment is affirmed.

Judgment affirmed.