GEORGE M. BARKER v. HELEN M. SMITH ET AL.

*Deed—Failure of consideration—Statute of frauds—Agreement for specific devise of property—Laches.*

A husband conveyed his home farm to his wife upon the distinct understanding and agreement that she would devise it to a college belonging to a church of which they were both members, which she did five days later. After the deed was prepared, but before its execution, the husband wrote to the president of the college, informing him of his wife's failing health and of her desire to devise her property to the college, but that she wanted first to see that women had the same privileges there as men, to which an answer was sent, stating that such was the intention of the trustees, upon the receipt of which the deed and will were executed, and the letter was answered by the husband, to which a postcript was added by the wife. The wife had been an invalid for years, and for this reason had not contributed to the accumulation of the property, and was at the time of the execution of the deed and will seriously ill, and was expected to live but a short time. She lived about 13 years after making her will, and about 11 years before her death executed a codicil, devising a life-estate in the land to her husband. After her death the will was presented for probate, which was denied because of the failure of the proponent to prove that it was properly witnessed. A portion of her heirs thereupon released their interest in the land to the husband, who filed a bill against the remaining heirs to set aside the deed on the ground of the total failure of the consideration therefor. And in affirming a decree granting the relief prayed the Court hold:

*a*—The agreement was fully executed by the husband and wife, and was sufficiently evidenced in writing by the letters written by the husband with the knowledge and assent of the wife, if not by her express direction, and by the will executed contemporaneously with the deed, to take it out from the operation of the statute of frauds.

*b*—Parol evidence of the declarations of the wife made at the time was admissible for the purpose of connecting the will and the deed together as one transaction, and to show the consideration and the agreement.

*c*—The case falls within the rule announced in *Carmichael v. Carmichael*, 72 Mich. 76. Both the husband and wife performed the agreement, and rested for many years content with it, supposing the will to be valid, which will failed of probate only because the witnesses thereto could not testify to the formalities of its execution. The consideration for the deed has therefore failed, and in equity the land must be considered as belonging to the husband, rather than to the heirs of his wife, to whom neither ever intended it should go.

*d*—Complainant has been guilty of no laches. He had no right of action until the death of his wife and the failure to probate her will, and he moved within a reasonable time thereafter, after failing to obtain what he considered his just rights by negotiation.

Appeal from Kent. (Grove, J.) Argued May 4, 1892. Decided June 17, 1892.

Bill to set aside a deed for failure of consideration. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Norris & Norris,* for complainant, contended:

1. The consideration for the deed having totally failed, complainant is entitled to rescind the executed agreement, and have his deed canceled, as against the defendants; citing *Jacox v. Clark,* Walk. Ch. 508; *Humphrey v. West,* 40 Mich. 597; *Thorn v. Thorn,* 51 Id. 167; *Quick v. Stuyvesant,* 2 Paige, 84; *Johnson v. Hubbell,* 10 N. J. Eq. 332 (66 Amer. Dec. 781); *Essery v. Cowlard,* L. R. 26 Ch. Div. 191; *Winfrey v. Drake,* 4 Lea, 293; *Boyce v. Grundy,* 3 Pet. 210; *Stark v. Henderson,* 30 Ala. 438; *Greenlee v. Gaines,* 13 Id. 198; *Moreland v. Atchison,* 19 Tex. 303.

2. The consideration for the deed was properly inquired into; citing *Colman v. Post,* 10 Mich. 422; and a sealed instrument in this State only imports a consideration *prima facie,* and a want of consideration may always be shown; citing How. Stat. § 7520; *Green v. Langdon,* 28 Mich. 226; *Jennison v. Stone,* 33 Id. 101; *Maltz v. Fletcher,* 52 Id. 485, 486; and the consideration may be shown to have been greater or less than the sum stated, or different; citing *Strohauer v. Voltz,* 42 Mich. 447, 448; *Dean v. Adams,* 44 Id. 117; *Hyler v. Nolan,* 45 Id. 357; *Bailey v. Cornell,* 66 Id. 107; *Flynn v. Flynn,* 68 Id. 27.

3. Even if the promise to devise was unexecuted and void, which is not conceded, the failure of consideration is just the same as if it were valid. Complainant's equity is in either case just as great, and his right to recover the consideration—the land —the same; citing *Wright v. Dickinson,* 67 Mich. 590; *Kelly v. Kelly,* 54 Id. 30; *Nims v. Sherman,* 43 Id. 45; *Cilley v. Burkholder,* 41 Id. 749.

4. But the agreement is not void. It was sufficiently evidenced by the correspondence in evidence, the deed, and the will,— substantially one contemporaneous whole. Again, it was executed on both sides, and hence not within the statute of frauds; citing *McClure v. McClure,* 1 Penn. St. 374; *Leonardson v. Hulin,* 64 Mich. 1; *Carmichael v. Carmichael,* 72 Id. 76; *Bird v. Pope,* 73 Id. 483; *Faxton v. Faxon,* 28 Id. 160; *Sword v. Keith,* 31 Id. 247; *Johnson v. Hubbell,* 66 Amer. Dec. 789 (note).

5. Until the death of Mrs. Barker, the will being unrevoked, complainant had no right of action; citing *Faxton v. Faxon,* 28 Mich. 160; and hence no laches can be imputed to complainant, who filed his bill October 22, 1890, only 43 days after the refusal to probate the will; reasonable promptness, under all of the circumstances, being all that is demanded; citing *Wright v. Wright,* 37 Mich. 55; *Case v. Case,* 26 Id. 492; *Insurance Co. v. Brown,* 11 Id. 265.

*Uhl & Crane,* for defendants, contended :

1. The parol evidence of the object and purpose for which the conveyance was made, with intent to convert the deed into one of trust, was incompetent; citing How. Stat. §§ 5563, 5573, 5652, 6179; *Dean v. Dean,* 6 Conn. 285; *Titcomb v. Morrill,* 10 Allen, 15; *Gerry v. Stimson,* 60 Me. 186; *Taylor v. Sayles,* 57 N. H. 465; *Shafter v. Huntington,* 53 Mich. 310.

2. The oral agreement alleged in the bill, that the grantee in the deed, which was absolute in form, should devise the same to a

third person, does not meet the requirements of the statute of uses and trusts; citing *Pulford v. Morton*, 62 Mich. 25.

3. The alleged oral allegation, made immediately and contemporaneously with the deed, was merged in the conveyance, which must be presumed to contain all the terms finally agreed upon; citing *Martin v. Hamlin*, 18 Mich. 354.

4. The conveyance was a voluntary deed, which purports to be for the beneficial use of the grantee, and which was made deliberately, and without mistake or fraud, and no trust results in favor of the grantor; citing *Graves v. Graves*, 29 N. H. 129; *Jackson v. Cleveland*, 15 Mich. 94; *Brown v. Bronson*, 35 Id. 415.

5. The complainant's proof that he had made voluntary contributions in money or in land to the Urbana University, that the grantee in the latter part of her life was an invalid, that the complainant had been seen to carry his wife in his arms, that Mr. and Mrs. Barker were zealously devoted to the welfare and prosperity of the New Church, and that Mrs. Barker in the latter part of her life was helpless " as far as all practical uses were concerned," does not meet the requirements of either the statute of frauds or the statute of uses and trusts.

6. Proof of the oral declarations of the grantee, which it is claimed tend to show that the grantee agreed by parol to devise the land to a third person, does not satisfy the requirements of the statute of frauds; citing *Wright v. King*, 1 Har. Ch. 12; *Bernard v. Bougard*, Id. 130; *Groesbeck v. Seeley*, 13 Mich. 326; *Newton v. Sly*, 15 Id. 391; *Cobb v. Cook*, 49 Id. 11; *Douglass v. Douglass*, 72 Id. 86; *Everts v. Everts*, 80 Id. 222; *Collar v. Collar*, 86 Id. 507.

7. If the complainant's proofs tend to show an oral agreement on the part of the grantee, yet the complainant is not entitled to the relief prayed, as such an agreement is within the statute of frauds; citing *Sturtevant v. Sturtevant*, 20 N. Y. 39; *Champlin v. Champlin*, 136 Ill. 309.

8. The will of the grantee, which the probate court disallowed, does not meet the requirements of the statute of frauds; citing *Champlin v. Champlin*, 136 Ill. 309.

9. The proofs do not establish a parol agreement on the part of the grantee in this deed to devise the land to the Urbana University, but do show that the deed was made for other and different reasons and purposes entirely.

GRANT, J. Complainant and his wife were married January 20, 1839. In 1845 he purchased 40 acres of

land, and shortly after, with his wife, settled upon it, and lived there until her death, November 9, 1889. They were possessed of but little property aside from this 40 acres. She was an invalid, and was practically helpless for the last 35 or 40 years of her life. A large portion of his time was spent in taking care of her, even doing the household work. This statement is material only as showing that she did not contribute to the accumulation of the property. Both were zealous members of the New Jerusalem Church, which had a college in Ohio known as the "Urbana University." In July, 1876, she was seriously ill, and neither she nor her friends expected that she would live long. July 1, 1876, complainant wrote out a deed to his wife of the premises in question. The deed was acknowledged July 6 and recorded July 7 of the same year. July 11, 1876, she executed her last will and testament, devising the premises to Urbana University. On the same day that he wrote the deed he also wrote a letter to the president of the university, in which he stated that his wife was gradually failing, and would probably leave this world at no very distant day; that she had property—real estate—in her own right, worth, in his judgment, $10,000 or $12,000, which she intended to bequeath to the New Church, to apply towards some of its many uses; that she would like very much to help the university, but wanted first to see that women had the same privileges there that men had. July 5 an answer was sent, saying that it was the intention of the trustees to afford equal facilities and privileges to both sexes. In 1878 she executed a codicil to this will, devising to complainant a life-estate. Both the will and the codicil were in the handwriting of the complainant. After her death the will was presented for probate by the university. It was contested by the defendants, and probate was denied on

account of the failure to prove by the witnesses that it was signed by Mrs. Barker in their presence and in the presence of each other.

Mrs. Barker left seven heirs, aside from her husband, four of whom voluntarily released their interest to him. The defendants refused to do this, and the bill in this case is filed to set aside the deed from complainant to his wife, on the ground of the total failure of the consideration thereof. The defendants in their answer set up (1) the laches of complainant; (2) the lapse of time; (3) the statute of frauds; and (4) the statute of uses and trusts. The cause was heard in open court, and the substance of the decree is as follows:

1. That complainant on July 1, 1876, was the owner of the premises.

2. That about the same time he and his wife were desirous of making a gift tō Urbana University, and thereupon entered into an agreement whereby, in consideration that she would devise the premises to that university, he would convey them to her, she being then daily expected to die, whereby she would have the pleasure and credit of the gift which both desired to make to said university.

3. That on or about July 6, 1876, he executed said agreement, by making, executing, and delivering to her the deed.

4. That on July 11, 1876, she made her last will and testament in accordance with the agreement.

5. That she died November 9, 1889, said agreement having never been abrogated, and that the will was refused probate for the reason already given.

6. That, by reason of the failure to probate said will, the consideration moving complainant to make such conveyance to his wife had wholly failed.

7. And that the deed be canceled and held for naught.

The deed to Mrs. Barker was an ordinary quitclaim deed, expressing a mere nominal consideration, and containing the usual *habendum* clause:

"To have and to hold the said premises to the said

party of the second part, and to her heirs and assigns, to the sole and only proper use, benefit, and behoof of the said party of the second part, her heirs and assigns forever."

Under this record three questions are presented, one of fact and two of law, viz.:

1. Was this property conveyed by Mr. Barker to his wife with the distinct understanding and agreement that she would devise it to the Urbana University, and did she execute a will in accordance with that agreement?

2. Was such agreement, if made, void by the statute of frauds and the statute of uses and trusts?

3. Is the right of the complainant to relief barred by laches?

1. I think the finding of the court upon the question of fact is sustained by the evidence. One witness testified positively that Mrs. Barker told him that her husband had deeded the land to her for the purpose of giving it to the university, that they were agreed upon it, and that it was the wish of both. At the time he wrote to the president of the university the deed had not been executed, though written out, and both evidently awaited the reply to that letter before consumating the agreement. Upon the receipt of the letter from the president favorable to the terms upon which she desired that the university should ultimately receive the property, the deed and will were executed. On July 21 Mr. Barker replied to the letter of July 5, evidently written for both himself and wife, stating that they thought that the female department should be placed on the college ground, and that she would gladly do what she could to help it forward. To this letter she added a postscript. It is evident, therefore, that she knew the contents of that letter. It is contrary to human experience and to reason that he, in anticipation of her death, should convey the property to her absolutely.

Neither was under any obligations to her relatives, and neither contemplated the ultimate transfer of any interest in the land to them.

2. The only doubtful and difficult question in the case is whether the parol evidence, together with the letters, was admissible to connect the deed and the will, and to show the consideration upon which the deed was made. If the university were attempting to establish a trust without any will or written declaration on the part of Mrs. Barker, or if complainant were seeking to show that he deeded the property to her to be held in trust for himself or some other person, parol evidence would be incompetent, both under the statute of frauds and the statute of uses and trusts. Such are the cases cited by the defendants. *Dean v. Dean*, 6 Conn. 285; *Titcomb v. Morrill*, 10 Allen, 15; *Gerry v. Stimson*, 60 Me. 186; *Taylor v. Sayles*, 57 N. H. 465; *Shafter v. Huntington*, 53. Mich. 310.

I think the agreement was fully executed by both Mr. and Mrs. Barker, and that it was sufficiently evidenced in writing by the letters written by Mr. Barker with the knowledge and assent of his wife, if not by her express direction, and by the will executed contemporaneously with the deed. I also think that the parol evidence of the declarations of Mrs. Barker at the time was admissible for the purpose of connecting the will and the deed together as one transaction, and to show the consideration and the agreement. *Carmichael v. Carmichael*, 72 Mich. 76. In that case, pursuant to a mutual agreement. resting partly in parol, a husband and wife made mutual wills. The wife accepted the provisions made in her favor by her husband's will. After the death of the husband the wife executed a deed in violation of her will and the agreement between her and her husband, which rested

partly in parol. My Brother MORSE, speaking for the Court, said:

"We have no doubt, from the two wills and their terms, and the oral evidence connecting them, that the father and mother came to a mutual understanding and agreement as claimed by the complainants."

It was also held that, if the contract were an oral one, a sufficient performance had been shown to take it out of the statute.

In my judgment, the present case is within the rule of that case. Both performed the agreement, and rested for many years content with it, and supposing the will to be valid. It failed of probate only because the witnesses thereto could not testify to the formalities of its execution which the law requires. The consideration for the deed has therefore failed, and in equity the land must be considered as belonging to the grantor, rather than to the heirs of Mrs. Barker, to whom neither ever intended it should go.

3. Complainant has been guilty of no laches. He had no right of action until the death of Mrs. Barker and the failure to probate her will. He moved within reasonable time after that event. He sought to obtain what he considered his just rights by negotiation. Having failed in this, he immediately filed the bill in this cause.

Decree affirmed, with costs.

LONG, J., concurred with GRANT, J.

MORSE, C. J. I cannot concur in the opinion of Mr. Justice GRANT in this case, because a decree for the complainant permits him to profit by his own wrong. Such is not the use of equity.

The theory upon which complainant seeks to recover the premises in question in this case is substantially this: That in 1876, his wife being ill and not expected to live,

the complainant, who was then the owner of the land, deeded it to his wife on the 6th day of July, because he and his wife desired to make a gift to Urbana University. The will was written by complainant, and signed by his wife. The execution of it was attested by four witnesses, one of them being the complainant himself. There was nothing about the instrument or its attestation, appearing on the face of the paper, showing any failure of proper execution. The wife recovered of her severe illness, and did not die until 1889. In 1878 she added a codicil to this will, witnessed by three persons, granting to her husband a life-estate in the premises. The will failed of probate because none of the witnesses, not even the complainant, could recollect whether the testatrix signed it in their presence. Now complainant comes into a court of equity, and claims that he deeded this land to his wife upon the express consideration that she should will it to the Urbana University, as she wanted the credit of the gift; that the will having failed of probate, and being therefore ineffectual to convey the property as desired and agreed, the consideration has failed, and he is entitled to have the property restored to him. This might be a meritorious claim, and one to which equity might lend an ear, did it not conclusively appear that the failure to prove this will was brought about by the complainant himself, and for the very purpose of defeating the object of the conveyance from him to his wife, as he declares such object to have been. In other words, he himself has destroyed the consideration of this conveyance to his wife, and, having done so purposely to help himself, then has the sublime audacity to come into a court of equity and ask the restoration of this land to him for no other reason than that the consideration of his deed to his wife has been destroyed. After the death of his wife, the desire to retain this land possesses him. He is not

satisfied with a life-estate. January 2, 1890, he writes to
one of the defendants, an heir at law, and states that
the reason his wife did not will the property to him was
because—

"She believed that if she should die he would marry
again, for to marry, widowers had temptations within,
and tempters without, if they had money, and she
thought that by diverting the money into another chan-
nel she would forestall the tempters, and place the
money where it would do the most good. I don't think
she felt that way at the time of her death. But, if she
had, is that a sufficient reason for ignoring the golden
rule? Had that property been hers· at marriage, or had
it been inherited from parents or other relatives, I would
not have presumed to lay a hand on it, though I had
been left penniless, and it is with unfeigned reluctance
that I do what I am doing. Eunice, Esther, Caroline,
and Oscar have each said to me, 'The property is yours,
and you ought to have it.' I think Helen uttered the
same sentiment, and Mary, at least, assented to it. In
your letter is this language: 'Now, George, if that will
work a hardship and wrong to you, we should consider
it, and, if possible, right that wrong.' Now, there is no
way of righting that wrong but setting aside the will,
and what would I gain by setting aside the will, if her
other heirs should step in and take possession? And all
we ask is that they sign a pledge that they will not do
that thing, or, in other words, that they sign a quit-
claim to property upon which they never had a claim,
either in law or equity.

"You ask what would be my plan of instituting a
suit to set aside the will. Such suits, I think, are usually
commenced by the beneficiary. Petition the probate
court that the will be admitted to probate. It is then
tried in that court, when one of the parties is sure to
get beat, and the beaten party may appeal, if he chooses,
to the circuit court, and thence to the Supreme Court.
You ask what advantage I would have over the imme-
diate heirs in maintaining a suit. Without going into
detail, I will mention some. First, it would be tried in
a court of equity, where parties are allowed to introduce
any testimony having a bearing on the subject, where
motives and intentions are of more account than mere

legal technicalities. It would be shown that this property was accumulated under my administration and by my labor; and that, for considerations purely private and domestic (which considerations no longer exist), a large portion was deeded to her. This, with the facts shown in this letter, with much more added, would be shown in evidence; while these immediate heirs could only show a bare deed given from husband to wife under the circumstances above mentioned, and where the nominal consideration was only two dollars, which makes it self-evident that the deed was not intended by either of the parties to convey rights to these 'heirs presumptive.'"

It is evident from this letter and others, as well as the testimony in the case, that complainant was determined to obtain the property, not only as against his wife's heirs, but also against the university. He was instrumental in defeating the probate of the will. When examined as a witness in the probate court, he could not tell whether the signature to his wife's will was written by herself or by him. When asked whether he signed his name as a witness to the will in the presence of his wife, he said:

"I couldn't even answer that. It was a long time ago, and at that time I did not know that such things were needed, and therefore it dropped out of my mind."

Nor could he tell whether Mrs. Barker signed the will in his presence. His memory seems to be very good as to matters in his favor, happening long years ago, but as to this will, which was the consideration, as he claims, of his deed to his wife, he is wonderfully forgetful,—a forgetfulness which, in my opinion, is born of his greed and desire for this land. It is plain to me that, had complainant desired the probate of this will, there would have been no difficulty in proving its due execution. But, as it was, all the parties to the suit, and their attorneys, appeared in the probate court, and were opposed to the establishment of the will, and the ques-

tions and proceedings were shaped to the end that it might fail of probate, as it did.

I do not care to discuss the other questions raised, since I am satisfied that the complainant ought not to be permitted to build his case out of the ruin of this will, which he himself destroyed with the intent to profit by such destruction. This would not be equity, but a reward given for wrongful conduct, not far removed from perjury.

The bill of complaint ought to be dismissed, with costs.

McGRATH, J., did not sit.

MONTGOMERY, J., having been of counsel in the case, did not sit.