Argued April 13, affirmed April 27, rehearing denied May 18, 1915.

## CHANCE v. GRAHAM.*

(148 Pac. 63.)

**Witnesses—Credibility—Voucher by Calling.**

1. A party who calls a witness thereby vouches for his credibility.

**Evidence—Hearsay.**

2. Hearsay evidence is incompetent.

**Trust—Action to Establish—Evidence—Declarations of Decedent.**

3. Where plaintiffs sued to establish a trust in their favor in land conveyed to defendants by their father, declarations by the father, to a plaintiff, that there was an agreement in the room where he was sick, signed by defendants, to the effect that the land was to come back to him after his debts had been paid, were not admissible as hearsay, under Section 732, L. O. L., providing that, when a party to a proceeding by or against an executor or administrator appears as a witness in his own behalf or offers evidence of statements made by deceased against the interest of the deceased, statements of the deceased concerning the same subject matter in his own favor may also be proven; since the instant suit was not such a proceeding by or against an executor or administrator.

---

*The authorities passing upon grantee's oral promise to grantor to hold in trust as giving rise to constructive trust are reviewed in an extensive note in 39 L. R. A. (N. S.) 906.

As to parol agreement to take title to real property, sell the same and account for the proceeds, as affected by statute of frauds, see note in 20 L. R. A. (N. S.) 298.    REPORTER.

**Trusts—Trust in Land—Statute—Sufficiency of Evidence.**

4. In an action to enforce a trust alleged to have been declared by decedent in conveying land to defendants, evidence *held*, insufficient to establish such trust under Section 804, L. O. L., providing that no estate or interest in real property other than a lease for a term not exceeding one year nor any trust or power concerning such property can be created except by operation of law, or by an instrument in writing subscribed by the party so creating the trust, or his lawful agent, and executed with the formalities required by law.

[As to creation of trust in land by parol, see notes in 115 Am. St. Rep. 774; Ann. Cas. 1913A, 954.]

**Trusts—Resulting—Constructive.**

5. Resulting and constructive trusts cannot be created by acts of the parties involved subsequent to the conveyance; since they are obligations imposed by law, which is constantly operant, attaching the consequences to be derived from the acts of the parties without delay.

**Trusts—Constructive Trusts—Sufficiency of Evidence.**

6. In an action to enforce a constructive trust alleged to have arisen through the fraudulent intent of the grantees of land not to reconvey, evidence *held* insufficient to establish such trust.

**Trusts—Constructive Trust—Deed Absolute on Face—Contradiction—Evidence.**

7. The law requires the most clear, explicit and satisfactory evidence to establish a constructive or resulting trust contrary to a deed absolute on its face.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by Kate Buchanan Chance, Sarah Merchant Graham and Rose Buchanan Graham against Robert B. Graham, John W. Graham, William W. Graham, Lillie A. Young, Jane M. Galbreath and Marion C. Young.

The plaintiffs and the defendants Lillie A. Young and Jane M. Galbreath are daughters of John Wallace Graham, deceased. The defendants of that name are his sons, and Marion C. Young is the husband of Lillie A. Young. The substance of the complaint is that on April 5, 1897, the father owned 308.9 acres, with other land; that he was heavily involved, the realty being mortgaged and in danger of being lost by foreclosure,

under which circumstances the owner conveyed it to the two defendants Young to manage and pay off, not only the mortgage, but also a personal debt from the grantor to Marion C. Young. To that end they were authorized to convey the property for the purpose of realizing funds, together with expenses and payment for the services of the grantees, and, if any of the property were left, it should be reconveyed to the grantor, if then living; otherwise to the plaintiffs and the defendant sons share and share alike. It was recited as a condition that, if the division of property could be made so that the sons might receive the realty and the plaintiffs a proportionate share of their father's estate in money, the distribution should be so made, but that in any event the plaintiffs and the defendant sons were to take in equal parts. It is said that the defendants Jane M. Galbreath and Lillie A. Young were to be excluded from the distribution on account of previous advancements having been made to them by their father. The pleading goes on to state that the defendant Marion C. Young, subsequent to the death of the grantor, succeeded in discharging all the indebtedness by sale of a portion of the premises, and that, after fully reimbursing himself for all moneys loaned and services rendered, there remained the 308.9 acres already mentioned, but there was no money for distribution to the plaintiffs. It is further narrated that in the latter part of December, 1903, and the early part of the following January, the defendants Young conveyed the land to the defendant brothers in substantially equal several parts. It is charged that each of the conveyances was made without consideration, and that all parties thereto had knowledge of the circumstances under which the title passed from the father to his daughter and son-in-law.

The prayer is to the effect that the sons be compelled
to account for the rents and profits accruing since the
conveyances to them; that they be held as trustees for
the plaintiffs for an undivided half of the property;
and that whoever holds the title, whether the Youngs
or the sons, be required to convey to the plaintiffs
accordingly. The defendants, except Jane M. Gal-
breath, admit the original title of the father, his deed
to the Youngs, his large debt, his death intestate, and
the conveyances to the sons; otherwise they deny all
the averments of the complaint. Jane M. Galbreath
makes similar admissions, denies the advancement to
herself, and affirmatively contends that each of the
daughters of John Wallace Graham named in the com-
plaint is the owner of, and entitled to, an undivided
one-eighth interest in the realty in question. Her af-
firmative answer was denied. Upon these issues the
Circuit Court made findings of fact and conclusions of
law favorable to the defendants and a decree dismiss-
ing the suit and the cross-bill so called of the defend-
ant Galbreath. From this decree the plaintiffs and the
defendant Galbreath appeal.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of
*Messrs. Chamberlain, Thomas & Kraemer* and *Mr.
Charles D. Latourette,* with oral arguments by *Mr.
Warren E. Thomas* and *Mr. Latourette.*

For respondent *Jane M. Galbreath* there was a brief
over the names of *Mr. P. C. Wood* and *Messrs. Dimick
& Dimick,* with an oral argument by *Mr. Wood.*

For other respondents there was a brief with oral
arguments by *Mr. A. E. Clark* and *Mr. John F.
Logan.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1–4. The plaintiffs called as their first witness the defendant Marion C. Young, thereby vouching for his credibility. The substance of his testimony, fortified by other evidence, is to the effect that John Wallace Graham was heavily indebted; that the mortgage upon his lands, of which the tract in dispute was a part, had been foreclosed, the property sold, and the time for redemption had nearly expired; that the mortgagor had made various efforts to raise the money to redeem, but without success, had endeavored to get the husband of the defendant Jane M. Galbreath to take the property off his hands, but without avail, had repeatedly tried to get the witness to take it and finally, at the earnest solicitations of the father of his wife, he had taken the conveyance shortly before the time for redemption had expired. The deed appears in the record admittedly in the handwriting of the grantor, the father, who was shown to be a man of affairs, well versed in business forms, and thoroughly conversant with the effect of such documents. Originally he had prepared it running directly to Marion C. Young alone; but at the time of its execution, under direction of the grantor, the notary taking the acknowledgment interlined as a grantee the name of Lillie A. Young. Both the Youngs and the notary unite in testifying that no agreement whatever was made about taking the property in trust or returning any of it either to the grantor or to his heirs, and that it was encumbered for all it was worth. In order to raise the fund for redemption the Youngs were compelled to mortgage, not only the land to be redeemed, but their own farm of 120 acres. The land was situated in Clackamas

County near the present line of the Oregon Electric Railway, but the transactions occurred before that road was completed. Owing to the successful management of the property by Young, who is shown to be a man of good executive ability, together with the general advance in realty values, apparently influenced largely by the subsequent advent of the railroad, he was enabled to extinguish the debts after the death of the grantor, which happened December 3, 1899, and have left the tract in dispute, besides 60 acres which he reserved for himself. According to his testimony he then proposed to distribute this property among the sons, charging the same in some form with the payment of money to each of the plaintiffs, but was unable to get them to agree upon the terms. After much family negotiation upon the subject without results he took the initiative, and conveyed the property as alleged in the complaint in substantially equal portions to the three sons. It appears in evidence that he took back a mortgage from each of them for $1,066, which he proposed on payment to divide among the daughters. As already stated, the ancestor had died intestate. The reasons given by Young for making the distribution contemplated was that while his grantor was in possession of the estate, and prior to the conveyance in question, he had frequently stated in family conversations that if he died possessed of property he would prefer that the sons should have land and that the daughters should receive money as their portion of his estate. No writing declaring any trust or imposing any limitations upon the title of the Youngs has been introduced in evidence. Over objection of the other defendants, however, Mrs. Galbreath testified that during her father's last illness he told her there was an agreement in the safe in the room

where he was sick signed by Mr. and Mrs. Young to the effect that the place was to come back to him after the debts were paid. She says she never saw the writing, and there is no other witness in all the case who even so much as intimates that he ever heard of such a document. Mrs. Galbreath also declared on oath that soon after her father's death she went into the room and found Mr. Young and his wife had opened the safe and were going through all the papers, at which she protested; but she is contradicted in this respect by other witnesses including Young and his wife. The most that can be said of her testimony on that point is that, if her father told her of such a paper, and if it was in the safe, the Youngs had an opportunity to make way with it. At best, her evidence in that respect ends in a succession of inferences without tangible result. It appears by the uncontradicted testimony of one of the sons that Young had no key to the safe, and that he himself, in the presence of other members of the family, opened it on the day of his father's funeral to see if there were any directions about his burial, and, finding none, they took a picture of their grandmother and a lock of her hair, put them in his father's pocket, and buried them with him, which transaction was the only purpose of examining the contents of the safe. The existence of any such agreement is expressly denied by both Young and his wife. The notary before whom the acknowledgment was taken acted as agent of the one who loaned the money for the purpose of redeeming the land. He testified that nothing whatever was said about any reservation of title by the grantor or the existence of any trust in his favor; that it was understood at the time that the absolute title was vested in Young and his wife; otherwise he would have required Graham to

sign the mortgage with them to cover any possible interest he had in the land. Sarah M. Graham, one of the plaintiffs, refused to have anything to do in the litigation, and did not appear in any of the proceedings. The other two plaintiffs contended in their testimony that an advancement had been made to Mrs. Galbreath at the time of her marriage, and that she was to be excluded from the distribution of her father's estate. They speak in an indefinite way about what Young was to do with the land and the residue after paying the debts, but disclose no situation in any way approaching the procedure required for a contract relating to land even if the same were reduced to writing. The testimony of Mrs. Galbreath about her father's statement concerning a written agreement said to have been in the safe properly may be disregarded for it is purely hearsay. The declarations of her father of which she speaks do not come within the proviso of Section 732, L. O. L.:

"That when a party to an action, suit, or proceeding by or against an executor or administrator appears as a witness in his own behalf, or offers evidence of statements made by deceased against the interest of the deceased, statements of the deceased concerning the same subject matter in his own favor may also be proven."

This is not an action, suit or proceeding such as is there described, and the proviso does not in this case contravene the general rule against the admissibility of heresay testimony. The declaration of Mrs. Galbreath in that respect is the only trace in the record of any writing declaring the condition under which the defendants Young hold the title to the land involved.

It is said in Section 804, L. O. L.:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law."

This section declares in unmistakable terms the requisites for creating an express trust in real property. Controlled by this statute, the testimony in hand utterly fails in any respect whatever to establish an express trust. It remains to consider whether there is a resulting trust or a constructive trust.

5. It is taught in *Barger* v. *Barger*, 30 Or. 268 (47 Pac. 702), that a resulting trust is one where property is purchased with the money of another, though the title is not taken in such other's name; while a constructive trust ensues where the purchase is made and the title acquired secretly and in violation of some duty to the *cestui que trust*. There is no pretense that the title which Young acquired was purchased with any money or other property belonging to anyone but himself. The possibility of a resulting trust is therefore eliminated from our consideration. A careful perusal of the testimony, both oral and documentary, fails to disclose any element of fraud or deceit on the part of the grantees in the deed. The Youngs took the conveyance only after repeated solicitations of the grantor. Instead of seeking it, the property was in a measure thrust upon them. The father thoroughly understood the situation, and was at the end of his efforts to repair his financial affairs. He recognized the hopelessness of the struggle, and, evidently with the desire to bestow the mere chance

upon those near to him, conveyed the mere equity of redemption to his daughter and her husband. It is a strong circumstance against the existence of a trust that he transferred it to the man and wife, instead of to either of them alone. If a trust was intended, it is most likely that he would have bestowed the title upon the one alone best qualified to manage the same successfully, and no good reason is suggested why the confidential estate should be vested in the daughter and her husband together. Moreover, as we have seen, there is no evidence whatever showing an express trust. All the testimony of those who know anything about the subject, or were in a position to know, shows clearly that the grantor bestowed the frazzle of his fortune upon the defendants Young without reservation, and that, too, without any deceit or unfair dealing on their part. It was theirs, and intended to be theirs, to do as well as they could with it; and no advantage can arise to the plaintiffs because fortune smiled upon their efforts. It is true that prior to the death of the grantor the defendant Marion C. Young told the father that he thought he could save a home for him on a certain 40-acre tract, but he explained this as having been made, not in pursuance of any obligation to do so, but purely as a voluntary proposition. The same may be said of his effort to divide the surplus after the debts had been paid. In other words, the sum and substance of the testimony of Young, whom the plaintiffs vouched for as a witness worthy of belief, is that he took the estate devoid of condition, and afterward sought to dispose of it without the compulsion of any agreement whatever.

If a resulting or a constructive trust arose at all, it must have been at the time of the conveyance; for

these are obligations imposed by the law itself in spite of or independent of the actions of the parties themselves. The law is constantly operant, and without delay attaches the consequences to be derived from the acts of the parties. So far as such trusts are concerned, they are not created or established by subsequent acts of any of the participants. The distinction is thus made in *Parrish* v. *Parrish,* 33 Or. 486, 494 (54 Pac. 352, 355):

"The essence of the fraud consists in the existence of a wrongful intent at the time to eventually appropriate the property while lending countenance to the belief in the owner that it was designed to be used for, and would finally inure to, his benefit. It differs from a promise with a purpose of complying therewith at the appointed time, and a breach thereof, for it is settled and conceded that a mere failure to fulfill the promise is not fraud, and the statute applies in such a case; but if the evil intent primarily existed, as above suggested, the transaction is fraudulent, and without the statute."

The doctrine that a trust may originate at the time the title is acquired is taught also in *Barger* v. *Barger,* 30 Or. 268 (47 Pac. 702), and in *Taylor* v. *Miles,* 19 Or. 550 (25 Pac. 143).

6, 7. Fraud is never presumed, but must be proven, and the evidence of Young, whose credibility is indorsed by the plaintiffs, is clear and explicit to the effect that he and his wife took the title reluctantly, without condition, and on the bare chance that the venture would be profitable. In the absence of any fraud or unfair dealing by means of which a constructive trust could be impressed upon the transaction, the language used by Mr. Chief Justice Wolverton in discussing the case of *Richmond* v. *Bloch,* 36 Or. 590 (60 Pac. 385), is peculiarly applicable:

76 Or.—14

"While the land was in the name of Adelaide Bloch, although she held under the parol trust, and was not, in fact or in good morals, according to the allegations of the answer, the real owner, she could have, under the authorities, repudiated the trust, and sold or encumbered the property, at her absolute will and discretion; and no one could have said aught against it or disturbed the transaction, because the real character in which she dealt with the property would not have been susceptible of proof."

The utmost that can be claimed from the testimony in the case at bar is that the Youngs were not subject to any legal or even equitable obligation which the courts will either recognize or enforce. The only just impression to be derived from the testimony is that, actuated by sentiment or filial respect for the general wishes of the grantor as to the property of which he might have been, but was not, possessed at the time of his death, they sought to divide the remnants as he probably would have done had he been in a situation to do so. It is said by the plaintiffs in argument that a parol trust in land is valid at the election of the trustee; in other words, such a trust, if that term can be coined under our statute, is not enforceable except at the option of the trustee. The plaintiffs are here in position of saying that the defendants Young having done something with the land they acquired must perforce do something more. The plaintiffs are in this dilemma: If the Youngs had executed the so-called parol trust, there would have been no complaint and no suit of this sort; if they have ignored the alleged confidence reposed in them, as well they may, under the authority of *Richmond* v. *Bloch,* 36 Or. 590 (60 Pac. 385), the plaintiffs have no standing to complain. The law requires clear, explicit and satisfactory testimony to establish a trust contrary to a

deed absolute in terms.     This doctrine is established by
the following authorities in this state: *Barger* v. *Bar-*
*ger,* 30 Or. 268 (47 Pac. 702) ; *Sisemore* v. *Pelton,* 17 Or.
546 (21 Pac. 667) ; *Parker* v. *Newitt,* 18 Or. 274 (23 Pac.
246) ; *Puckett* v. *Benjamin,* 21 Or. 380 (28 Pac. 65) ;
*Snider* v. *Johnson,* 25 Or. 331 (35 Pac. 846) ; *Oregon*
*Lumber Co.* v. *Jones,* 36 Or. 83 (58 Pac. 769) ; *Hall* v.
*O'Connell,* 52 Or. 164 (95 Pac. 717, 96 Pac. 1070).

Much reliance is placed by the plaintiffs on this ex-
cerpt from *Gray* v. *Beard,* 66 Or. 59, 69 (133 Pac. 791,
794) :

"The general rule is that an express trust may be
proved, not only by express declarations, but also by
circumstances from which its existence may be in-
ferred, and to this end evidence of the acts and decla-
rations, either oral or written, of the parties, as well
as the surrounding circumstances, may be admitted
and considered"—citing 39 Cyc. 80, and other authori-
ties.

This statement was not necessary to the decision
there.     In that case the uncle of the defendant was in
the habit of keeping his realty in the name of some
relative, and in consequence thereof had conveyed two
tracts of land to the defendant; but it appeared in
evidence that the latter had executed return convey-
ances to the uncle in each of the two instances involved,
but they were not recorded.     The question of con-
structive trust was therefore not necessarily involved.
The precedents cited in support of the text there
quoted from 39 Cyc. 84, are here examined.     *Ransdel* v.
*Moore,* 153 Ind. 393 (53 L. R. A. 753), was a case
where the writings signed by the trustee were held to
be a sufficient declaration of the trust.     In *Kendrick*
v. *Ray,* 173 Mass. 305 (53 N. E. 823, 73 Am. St. Rep.
289), a policy of insurance was made payable to

"Taft, trustee." A sealed letter of the testator, the insured, declared Ray to be a *cestui que trust,* but parol testimony was admitted to explain the situation of the parties as a means of interpretation of the writings included in the policy and the sealed letter. In *Chase* v. *Perley,* 148 Mass. 289 (19 N. E. 398), only personal property was involved. It was not attempted to create a trust in land. In *Barker* v. *Smith,* 92 Mich. 336 (52 N. W. 723), a husband had conveyed land to his wife to be by her devised to a college. She made the will, but it failed of probate. In a suit to recover the land after her death and an abortive attempt to prove the will, it was held that parol evidence was admissible merely to show the connection between the deed and will on the subject of failure of consideration. *Shelly* v. *Heater,* 17 Neb. 505 (23 N. W. 521), relates only to personal property. There is a *dictum* in *Lamb* v. *Girtman,* 26 Ga. 625, to the effect that secret trust may be proven by parol, but no reference is made to any such or the nature of the trust involved. *Gadsden* v. *Whaley,* 14 S. C. 210, refers only to personalty. *Cave* v. *Anderson,* 50 S. C. 293 (27 S. E. 693), is not in point, for it does not discuss the subject of trusts in any form. *Ferguson* v. *Haas,* 64 N. C. 772, depends upon a peculiar statute of that state, and treats of a resulting trust. *Paddock* v. *Adams,* 56 Ohio St. 242 (46 N. E. 1068), relates to a resulting trust where the father paid the purchase price of land and had title taken in his son's name *Massey* v. *Massey,* 20 Tex. 134, turns upon a written admission by the trustee of the existence and terms of the trust. The subject matter involved in *Connecticut River Sav. Bank* v. *Albee,* 64 Vt. 571 (25 Atl. 487, 33 Am. St. Rep. 944), was money deposited in a bank by the vendor styling himself trustee for his son. In

all these cases where the subject was discussed at all
there was involved either a trust in personalty or the
construction of a writing in some way declaring the
trust. It is believed that no well-considered case
under a statute like ours can be found where an ex-
press trust was created out of the whole cloth of oral
testimony. There are doubtless many instances
where it is held that an express trust in realty may
be proven by parol, but they are based on statutes
which do not contain the provisions cited from our
Code. The great weight of authority, however, is to
the contrary, and we cannot indulge in any refine-
ments which are adverse to the express declarations
of our statute. For instance, in *Insurance Co.* v.
*Waller,* 116 Tenn. 1 (95 S. W. 811, 115 Am. St. Rep.
763, 7 Ann. Cas. 1078), it is held to be settled law in
Tennessee that:

"A contemporaneous parol agreement, made at the
time of the execution and delivery of a conveyance of
real estate, absolute upon its face, that the vendee
will hold the property conveyed in trust for a certain
person, is not within the statute of frauds, and, aside
from the rights of creditors of the original vendor and
innocent purchasers from the vendee, vests in the
beneficiary of the trust a valid equitable title to the
property conveyed, which a court of equity will en-
force."

In that case the owner of land, for the purpose of
delaying his creditors, conveyed it to a kinsman with
the contemporaneous parol agreement that the latter
should hold the property for his heirs and convey the
title as the grantor should direct. Afterward the
kinsman, on the eve of his wedding, fearing some
complication which marriage might produce, conveyed
the property to the wife of his grantor upon the same

conditions. Afterward she executed what the court held to be sufficient as a conveyance of the realty to her husband. The court there properly held, as this court did in *Richmond* v. *Bloch,* 36 Or. 590 (60 Pac. 385), that the parol trust was executed, and hence was valid. Upon the entire record, the opinion is not an authority for an executory trust in land. A note to that case in 115 Am. St. Rep. 763, *supra,* contains an extended discussion of the question. The matter is treated extensively also in the note to *Holmes* v. *Holmes,* Ann. Cas. 1913B, 1021.

The conclusion is that the testimony fails utterly to show an express trust, and that, while many things have happened which would have occurred had there been a resulting or a constructive trust in the land, yet the great and countervailing weight of the testimony is against any such condition. Merely because the Youngs voluntarily conveyed the land we cannot conclude they were under any obligation to do so.

The decree of the Circuit Court is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE HARRIS concur.