WILLIAM COFFIN *et al.*

*v.*

ALEXANDER P. ARGO *et al.*

*Filed at Springfield June 12, 1890.*

1. IMPEACHING DECREE—*by infants—upon what grounds.* A minor may maintain in this State a bill to impeach a decree against him, for fraud, or for error appearing upon the face of the record.

2. PARTITION—*sale—only after report of commissioners.* In a proceeding for the partition of land, whether in equity or under the statute, it is an essential prerequisite to a decree of sale that commissioners shall have been appointed, and they report that the land is not susceptible of partition. Section 16 of the Partition act is mandatory, and when partition is sought by either mode, a decree for a sale is erroneous, unless based upon a report of commissioners.

3. TRUST—*whether a trust arises—and in whose favor.* The owner of certain lands conveyed the same, in parcels, to his sons and sons-in-law, the latter giving their notes in return, for a purchase price, with interest. Only so much of the interest was to be paid as might be needed by the grantor, and the principal not to be collected at all, but the notes to be surrendered to the makers at his death. Subsequently one of the sons-in-law desired the title to the land conveyed to him to be vested in his wife, to which the grantor assented, and in furtherance thereof the grantee mentioned, and his wife, conveyed to a third person, who at once executed and acknowledged a deed to the wife, but it was questioned whether that deed had ever been delivered. The original grantor surrendered to this son-in-law the notes he had received from him. On bill filed by the other heirs of the first grantor, it was *held,* that the grantee of the son-in-law mentioned, and his wife, held the title in trust for the latter, and not for the heirs generally. It was not essential to the right of the *cestui que trust* that she should have given her notes in lieu of those which had been surrendered to her husband,—and especially was this true in view of the fact that the original grantor, for whose benefit, alone, the notes could have been required, had died before the bill was filed.

4. SAME—*bill to declare a trust—sale of the trust estate.* On bill to declare the trust upon which a defendant holds land, where no liens are set up or any equitable reasons shown for the sale of the land, it will be error to order its sale. In such case, the power of the court is spent when it declares the uses.

WRIT OF ERROR to the Circuit Court of Piatt county; the Hon. C. B. SMITH, Judge, presiding.

Mr. FRANK PITTMAN, for the plaintiffs in error.

Mr. W. E. LODGE, and Mr. S. R. REED, for the defendants in error.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was a bill in chancery, filed in the Piatt circuit court, by William, John and Solomon Coffin, minors, etc., by their next friend, against Alexander P. Argo and others, to impeach a decree rendered in said court in a proceeding in chancery, wherein the said Alexander P. Argo was complainant, and Solomon Argo and others, including these complainants, were defendants, and to vacate and set aside the sales of and deeds to real estate made by virtue of said decree, and to have the title to said land decreed to be in them. The bill of said minors was, on the hearing in the circuit court, dismissed, and they now bring the record to this court by writ of error.

The right of the minor complainants to maintain a bill to impeach the former decree for fraud, or for error appearing upon the face of the record, is clearly established in this State. *Loyd* v. *Malone,* 23 Ill. 43 ; *Kuchenbeiser* v. *Beckert,* 41 id. 172 ; *Hess* v. *Voss,* 52 id. 472 ; *Gooch* v. *Green,* 102 id. 507 ; *Lloyd* v. *Kirkwood,* 112 id. 329 ; *Haines* v. *Hewitt,* 129 id. 347.

Conceding all that is claimed by defendants in error, we are of opinion that the decree in this cause must be reversed. Taking everything alleged in the bill of Alexander P. Argo as true, the court, in that suit, erred in rendering a decree ordering the land sold. If said bill is to be treated as a bill to declare the trust upon which Solomon Argo held the land in controversy, only, then the power of the court was spent when it declared the uses. There were no liens set up, or any equitable reasons shown for sale of said land. If said Solomon

held said land in trust for the heirs of John Argo, such heirs were tenants in common, in equity, in and to the land. When the court found and decreed that said Solomon so held the same in trust, it was its duty to declare the same, and vest the legal title in the true owners. If, however, that bill may also be treated as a bill for the partition of real estate held by the heirs of John Argo by equitable title, then there was a fatal error in ordering a sale of the land without first having ordered a partition and appointing commissioners to make the same. If it be true that the land belonged, in equity, to the heirs of John Argo, as tenants in common, the complainants in the present bill, as the owners of a one-fifth interest therein, had a right to have their portion of the land partitioned to them, if it could be done without manifest prejudice to the proprietors of the land. We held in *Rohn* v. *Harris*, 130 Ill. 525, that whether the proceeding for partition is by petition under the statute or by bill in chancery, an essential prerequisite to a decree authorizing a sale is the appointment of commissioners to make partition, and a report by them that the land is not susceptible of partition; that section 16 of the Partition act is mandatory, and that where partition is sought by either mode; a decree for sale is erroneous, unless based upon a report of commissioners. See, also, *LeMoyne et al.* v. *Quimby et al.* 70 Ill. 399.

But independently of this error, and going to the merits of the controversy, we are not prepared to hold, as was found and declared in the decree rendered in the former case, that Solomon Argo, under the deed from James B. Coffin and wife, held said land in trust for the heirs of John Argo, deceased. Without entering upon an extended discussion of the evidence, it may be said, that John Argo, apparently desiring that his sons and sons-in-law should have the use of portions of his land during his lifetime, and intending to reserve to himself an income, if it should be needed, at least out of the parts conveyed to the sons-in-law, conveyed lands to each of his two sons and

three sons-in-law, taking from the latter notes for a purchase price. In respect to the notes taken from Coffin and Stolter the consideration was divided into five parts, and notes taken, payable in one, two, three, four and five years, with interest. The notes were made payable to John Argo, for the use of his sons and sons-in-law, one being payable for the use of each. The weight of proof is, that these notes were given with the agreement and understanding that the interest was to be paid if John Argo needed it, and that the principal of the several notes was never to be paid. It seems that Stolter's notes were surrendered to him, and that the notes of Kennedy, the other son-in-law, have not been paid. The tract of land conveyed to Solomon, one of the sons, was in consideration of one dollar, which he swears he paid, and it does not clearly appear what consideration was paid by the other son. All of these parties entered into possession under their deeds.

Two or three years after the making of said deeds and notes, James B. Coffin, for some reason not important here, desired that the land deeded to him should be conveyed to his wife, Nancy Coffin. Thereupon, and with the consent of John Argo, and for the purpose of putting the title into said Nancy, Coffin and wife made and delivered their deed to said land to said Solomon Argo. The last mentioned deed is the deed under which it is claimed that Solomon holds the land in trust for the heirs of John Argo. At the time of the making and delivering of that deed, Solomon Argo and wife executed and acknowledged a deed conveying the land to Nancy Coffin, and there is controversy in the evidence as to whether that deed was ever delivered. We do not find it important to determine whether it was or not, for, in any event, it must be held that said land was conveyed to Solomon in trust, to convey to said Nancy. This is not disputed, but it is said that such conveyance was to be made to her only upon the condition that she should execute like notes with those her husband had executed at the time the land was conveyed to him, and which notes had been

surrendered by John Argo to her husband, and that since she either neglected or refused to execute the notes, she therefore never became entitled to the deed. If this position be true, it can not affect the title to the land. John Argo is dead, and was at the time of the filing of the several bills herein. There is no pretense that he ever made demand for any interest that he did not receive, and the principal of the notes was never to be paid, but the notes, at his death, as shown by a preponderance of the proof, were to be used merely as evidencing the amount that had been advanced, or, if not to be regarded as a technical advancement, to show the amount that the maker had received out of the estate. John Argo consented to the change of title from James B. Coffin to Nancy Coffin. She was to do no more than to give notes, which, under the arrangement, would be cancelled at his death. He voluntarily surrendered the notes of James B. Coffin. He never afterwards, so far as shown by this record, sought to make any change in the disposition of the land. When the bill was filed by Alexander P. Argo, Solomon Argo held the land in trust for Nancy Coffin or her children. This must be so even upon the assumption most favorable to defendants in error that can be drawn from the proofs,—that the land was to be conveyed to Nancy upon her execution of like notes, and having the like effect as the notes given by her husband. As the owner of the land had made no change in the use to which Solomon held it, and the time having arrived when the notes were to be regarded only as determining the amount she had received from her father, their execution would be a useless thing. There being nothing to be done by her, Solomon would become the mere holder of the naked legal title for her use.

. The decree of the circuit court dismissing the bill in this case is reversed, and the cause is remanded, with directions to enter a decree cancelling the master's deeds to Solomon Argo and to Alexander P. Argo for parcels of said land, setting aside the master's sale, and vacating the decree rendered in the said

cause of Alexander P. Argo against Solomon Argo and others, and for further decree not inconsistent with this opinion. The legal title to the land should be conveyed to plaintiffs in error, and if it be found that the trustee has expended any money for their benefit, in paying taxes or other liens upon the land, an account of the same should be taken, and his equitable rights in respect thereto protected.

*Decree reversed.*