ANGELINE WILLIAMS, Appellant, v. EDWIN J. WILLIAMS *et al.*

| 108 | 91 |
|-----|-----|
| 120 | 250 |
| 121 | 239 |
| 108 | '91 |
| 139 | 162 |

**Resulting Trust.** A father about to move his family west, sent one of his sons to look up a location, and he, with the proceeds of the sale of the father's farm in the east, purchased a farm, taking the title in the name of himself and another brother. The family then settled on the farm, working it jointly. Two of the daughters, on their marriage, removed therefrom, and the brother who purchased it, also left it, first making a conveyance to the brother in whose name, jointly with himself, he had taken the conveyance, for a nominal consideration. This brother thereafter conveyed to an unmarried sister, and she, being in failing health, conveyed back to the brother who had purchased the lands. This brother thereafter conveyed part of the tract to his wife. No consideration was paid for any of the conveyances, and two sisters, who never married, resided on the land until their death, and, with the exception of the brother purchasing the farm the other brothers resided thereon until they became unable to work it. *Held*, that, on purchasing the lands with the money furnished by his father and taking the title in himself and brother, a trust resulted in favor of all the children, subject to which the wife took, it being within the saving clause of Code 1873, section 1934, requiring declarations of trust in relation to real estate, except trusts resulting from the operations of law, to be executed in the same manner as deeds.

**Secondary Evidence: ADMISSIBILITY.** Evidence that witness did not remember when he last saw a contract, and that he could not tell whether it was at home or elsewhere, or whether another person had it, was insufficient to authorize the admission of parol evidence of the contents of such contract.

*Appeal from Clinton District Court.*—HON. P. B. WOLFE, Judge.

FRIDAY, APRIL 7, 1899.

PLAINTIFF, claiming to be the owner in fee simple under a warranty deed from her husband, H. L. Williams, of a certain 80-acre tract of land in Clinton county, Iowa, brings this action to quiet her title thereto as against the defendants, and to recover rent for the years 1893 and 1894. The defendants answered, denying that plaintiff is the owner of said land or entitled to rents as claimed. Further answering, they make allegations, as will hereafter appear, upon which they claim that the title to said land was held in trust by the said H. L. Williams, for himself and for his brothers and sisters, the defendants and their heirs, and that plaintiff knew that fact when she accepted said deed from her husband, and that no consideration was paid by the plaintiff for said conveyance. They ask judgment establishing the rights and interests of the parties in said land. Plaintiff replied, and, after hearing upon the issues joined, decree was rendered apportioning the land among all the parties, and from this decree the plaintiff appeals.— *Affirmed.*

*Barker & McCoy* for appellant.

*Ellis & Ellis* for appellees.

GIVEN, J.—We find the following facts to be fairly established by the evidence: Prior to 1854, Mr. Williams, Sr., now deceased, owned a farm in Vermont, which was sold in contemplation of the family removing to the West. The family then consisted of the father, three sons, Edwin, Henry, and Darwin, and four daughters, Harriet, Parthenia, Emily, and Phoebe. Henry came West to look for a location for the family, and purchased six 80-acre tracts,—three in Cedar county and three in Clinton

county, including the one in question,—and thirty-two
acres of timber land. He took the title in his name and
that of Edwin. This land was paid for with the proceeds
derived from the sale of the Vermont farm, excepting one
80 in Cedar county, which, being school land, was pur-
chased on long time, and paid for out of the proceeds
derived from the cultivation of the farm. In the fall of
1854 the family came to Iowa, erected a house on one of the
80-acre tracts in Cedar county, and thereafter lived thereon,
each member of the family aiding in improving all of said
lands and using the same as one farm. They continued to
live together as a family until 1857, when Emily married
a Mr. Alden, and went to live elsewhere. Henry married
the plaintiff in 1859, and in 1861 he left the farm, and
went to live elsewhere. Phoebe married a Mr. Ordway in
1870, and went elsewhere to live. Harriet and Parthenia
remained unmarried, and continued to reside on the farm,
up to the time they died. Edwin and Darwin remained
unmarried, and continued to live on the farm until 1893,
when, being unable to work it themselves, they rented it, and
with their sister Mrs. Ordway rented a house elsewhere, in
which they have since lived. Mr. Alden died intestate in
1889, leaving Emily, his widow, and Alton G., Hattie,
Mary, Emma, and Edith, his children, surviving him, all
of whom are of age and parties to this action. On February
9, 1861, about the time Henry left the farm, he and his
wife, the plaintiff, conveyed the land, by warranty deed, for
the recited consideration of one dollar, to Edwin. This
deed was evidently made to place the land under the care of
Edwin, who, with Darwin, Parthenia, and Harriet, remained
on the farm. On the 10th day of April, 1867, Edwin,
being in feeble health, conveyed the land to Parthenia, by a
warranty deed, for the recited consideration of six hundred
dollars. On September 15, 1882, Parthenia, then in fail-
ing health, conveyed the land to Henry, by warranty deed,
for the recited consideration of one thousand eight hundred

dollars. On July 4, 1889, while in poor health, and but a few days prior to his death, Henry executed said warrany deed to his wife, the plaintiff, for the recited consideration of one hundred dollars. It is entirely clear that no consideration whatever was paid for any of these conveyances, and that, excepting the one to the plaintiff, each was made for the purpose of allowing the grantee to hold the title in trust. The plaintiff testifies: "I had agreed to let them have the rent as long as Edwin stayed on the premises and paid the taxes. I had agreed to that with my husband. When the deed was given to me by him, he told me that." Mrs. Emily Alden testifies: "Darwin was not exactly of sound mind. He couldn't talk plain, so that many people could understand what he said. He never was of sound mind." As to Edwin she says: "Edwin, I think, is now far from being of sound mind. He has a very poor memory and weak mind. I mean he was not of a very sound mind,—not capable of attending to business."

2        Edwin was examined for the defendants, and, on cross-examination, stated to the effect that his father had deeded the Vermont farm to him and Henry; that there was a contract signed that they should see that the girls and brother had their support out of it. He says: "I can't tell whether that contract is home among the papers or elsewhere. They would be supported their life,—all the support they needed. I had a written notice or paper that we got to come up to that mark. I can't tell whether it is in the papers at home or whether Alden had it. I don't remember when I seen it last." There is no other evidence of the existence of such a contract, and, clearly, this evidence as to its contents is inadmissible, inasmuch as it is not shown that the contract itself could not have been produced if it did exist.

Appellant insist that the trust, if any, rests upon the deed from Parthenia to Henry, and that, as it is a warranty deed for full value, it creates an estoppel as to Parthenia .

and Edwin and their heirs. That a trust arose there can be no doubt, and it is clear that it arose upon the execution of the deed from the former owner to Henry and Edwin, and rests upon that deed. The purchase, except as to the school eighty, was with money set apart for the benefit of the seven children, and all the subsequent conveyances; except possibly that to the plaintiff, were made with knowledge of and with that fact in view. Section 1934 of the Code of 1873 is as follows: "Declarations, or creations of trusts or powers, in relation to real estate, must be executed in the same manner as deeds of conveyances; but this provision does not apply to trusts resulting from the operation or construction of law." Appellant insists that this trust comes within these provisions; but not so, we think, for there is no competent evidence of a "declaration or creation" of a trust or power in relation to this land. Trusts resulting from the operation or construction of law are divided into two classes: *"First,* those which are said to result by operation or presumption of law from certain acts or relations of parties, from which an intention to create a trust is supposed to exist, and which are called 'resulting' or 'presumptive' trust; *second,* those which exist by construction of law alone, without any actual or supposed intention that a trust should be created, but merely to assert the rights of parties or baffle fraud." *Dunn v. Zwilling,* 94 Iowa, 234. It is further said in that case: "Resulting trusts may arise— *First.* when the purchaser pays the purchase price, but takes the title in the name of another; *second,* where a trustee or other fiduciary buys property in his own name, but with trust funds; *third,* where the trusts of a conveyance are not declared, or are only partially declared, or fail; and, *fourth,* where a conveyance is made without any consideration, and it appears from the circumstances that the grantee was not intended to take beneficially." The facts of this case bring it clearly within the rule that where the trustee, or other fiduciary, buys property in his own name, but with trust

funds, a resulting trust arises.  See *Cotton v. Wood,* 25
Iowa, 44; *Hagan v. Powers,* 103 Iowa, 594.  Appellant
cites *McGinness v. Barton,* 71 Iowa, 644; *Brown v. Barn-
grover,* 82 Iowa, 204, and other cases, wherein it was held
that the facts established an express trust, and were within
the provisions of said section 1934.  The facts in those
cases were entirely different from the facts in this, and they
are therefore not in point.  We conclude that the facts of
this case clearly bring it within the rules of law "as to trusts
resulting from the operation or construction of law."

Some question is made as to the correctness of the appor-
tionment made by the decree.  We think it is correct, not
only as to the finding of the trust, but as to the interests of the
respective parties, and it is therefore AFFIRMED.