the clerk could designate any other year, he could designate one no matter how remote from the time of the commencement of the term. The policy of the law is better served by holding that the electors should select the persons to hold the offices at a time just prior to the commencement of the term.

It is suggested that if a mistake was made as to the year in which these officers were to be elected, and the mistake was not discovered until the election was over and the result declared, the election should still be regarded as valid, though the terms of office did not commence until more than a year after the election, and that the incumbents, Kent, Hart, and Elder, should be held to be estopped from alleging the invalidity of the election in 1902, and to have waived their right to hold their offices after January 1, 1903. We cannot concur in such a view. We do not think the election of Stupp, Drummond, and Wheelan in November, 1902, can be regarded as valid, because of mistake, estoppel, waiver, or for any other reason. The present incumbents hold their offices until January 1, 1904. Their successors must be elected at the election in November, 1903. It is important that there should be no further doubt as to the persons legally entitled to hold these judicial offices. There should be an election of officers this year to fill these offices, about which there can be no further controversy.

Judgment upon the submission should be ordered in accordance with the views hereinbefore expressed; the form of the order to be settled before Justice WILLIAMS on ten days' notice. No costs are asked for in the submission, and none will, therefore, be allowed. All concur.

═══════════

GREENLEY v. SHELMIDINE.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. PAROL TRUST—VALIDITY—PERFORMANCE—EQUITY.
    Plaintiff, prior to June 26, 1884, was the owner of two farms subject to a mortgage, and applied to defendant for a loan, which he refused, but verbally agreed that, if plaintiff would deed the farms and personal property to him, he would manage and dispose of the same, and, after reimbursing himself with the balance, would provide for the debts owing by plaintiff, and pay her the residue. A deed to the farms and personal property was executed, which expressed a consideration of $10,000, but nothing was in fact paid. Defendant took possession, paid the interest on the mortgage, and operated both farms until 1890, when he sold one of them for $6,500. He paid no part of plaintiff's unsecured indebtedness, but paid her $250 in small amounts, and he had never repudiated his agreement until suit was brought in August, 1898, to enforce the same, when he claimed to be the absolute owner of the property. *Held* that, though defendant's agreement was invalid as a parol trust, yet, he having received title to the property thereunder, plaintiff was entitled to enforce the same in equity and recover restitution of the property.

2. SAME—LIMITATIONS.
    Defendant not having repudiated the agreement or intimated he would not perform the same until about the time the action was brought, the action was not barred by limitations.

¶ 2. See Limitation of Actions, vol. 33, Cent. Dig. §§ 506, 507.

Appeal from Special Term, Jefferson County.

Action by Mary E. Greenley against Jerome L. Shelmidine. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS and HISCOCK, JJ.

E. F. Ramsdell and E. C. Emerson, for appellant.
Rogers & Atwell, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs. The action is to enforce a verbal agreement as to real property, and to procure restitution thereof, and the proceeds of the same, after compensation for services and reimbursement for moneys properly expended in the management and sale of the property under the agreement. The trial court decided the plaintiff was entitled to this relief, and ordered an accounting before a referee, reserving all other questions until the coming in of the report of the referee appointed to take and state the account. The appellant claims the verbal agreement was not valid or enforceable, and that the cause of action was, for various reasons, bound by the statute of limitations. The facts found by the trial court for the purpose of this appeal do not appear to be controverted. Prior to June 26, 1884, the plaintiff was the owner of two farms in the town of Lorraine, Jefferson county, N. Y.—one of 107.17 acres, known as the "Smith Farm," the other of 140 acres, known as the "Rogers Farm." The Smith farm came to the plaintiff by inheritance from her mother. The Rogers farm was acquired by purchase. To secure the purchase price of the Rogers farm, the plaintiff on the 8th day of June, 1871, gave a mortgage on both farms to Elisha Rogers, which was duly recorded, and on the 26th day of June, 1884, there remained unpaid upon the mortgage $9,418, and interest from May 26, 1883. These two farms constituted substantially all the property the plaintiff then had, and were worth from $12,000 to $16,000. The crops growing thereon were worth about $1,000. The plaintiff was then indebted on promissory notes to Greenly, McNeil & Gates in the sum of $3,000, which was practically all she owed outside of the said mortgage. The plaintiff and her husband then lived at Syracuse, N. Y., and the farms were occupied by tenants. They tried to raise the money to pay the interest on the mortgage, having been notified by the holder of the mortgage that, unless the interest was paid on June 26, 1884, foreclosure proceedings would be instituted. The property upon a foreclosure would not have sold for much more than the amount of the mortgage. The defendant was a man of considerable means, living in the town of Lorraine, an old acquaintance of the plaintiff and her husband, knew them both before they were married, had lived on the Smith farm a number of years, had been associated in business with the husband, and had dealings with him for a number of years. Their relations were very friendly, and the plaintiff and her husband had great confidence in his judgment and integrity. About June 24, 1884, the husband went and met the defendant at Adams, Jefferson county, and tried to obtain from him the money with which

to pay the interest, but defendant said he did not have it. They (the husband and defendant) also went to the bank where the mortgage was held to obtain an extension of time for the payment of the interest, but were unsuccessful. On the following day—June 25, 1884— they went to Syracuse, and saw the plaintiff. They advised her that the best and only thing to do was to place the property in the hands of the defendant. The plaintiff, as well as the husband, relied upon the defendant's advice. It was then verbally agreed between the plaintiff and the defendant that, if she would deed the property, real and personal, to him, he would manage and dispose of the same, and, after reimbursing himself for the money paid out by him and for his services, would, with the balance, provide for the debts owing by her, and pay the balance to the plaintiff. There was no time fixed by the parties for carrying out the agreement. The Rogers farm was to be sold first, and it was contemplated that some arrangement might be made by which the plaintiff would take the Smith farm, or a price be fixed at which the defendant would keep it. Pursuant to this agreement, and at the solicitation of the defendant and her husband, the plaintiff, on the 26th day of June, 1884, deeded the two farms and the crops growing thereon, subject to the rights of the tenants in possession, to defendant, her husband joining with her in the deed. The consideration stated in the deed was $10,000, and the deed was made subject to the mortgage, which the defendant assumed and agreed to pay. Nothing was in fact paid by the defendant at the time the deed was given. The defendant immediately went into possession of the two farms, raised the money, and paid the interest on the mortgage, and ran both farms until 1890, when he sold the Rogers farm, and on the 1st day of November, 1895, gave a conveyance thereof, the consideration stated being $6,500. The defendant has paid no part of the unsecured indebtedness of plaintiff. From time to time after the transfer and agreement, and up to about 1896, defendant paid the plaintiff, in small amounts, about $250. When this action was commenced, August 20, 1898, the defendant claimed the property was absolutely his, and the plaintiff had no rights therein or in the proceeds thereof. He had not, however, until about that time, repudiated the agreement, or intimated that he would not perform the same. The court found as matter of law that the verbal agreement was valid and binding, was not obnoxious to the statute of frauds, and the action on account thereof was not bound by the statute of limitations.

The trial court regarded this case as coming within and governed by the principles laid down in Ryan v. Dox, 34 N. Y. 319, 90 Am. Dec. 696, and Kincaid v. Kincaid, 85 Hun, 141, 32 N. Y. Supp. 476, affirmed on opinion of General Term, 157 N. Y. 715, 53 N. E. 1126. In the Ryan Case the plaintiffs procured the defendant to bid off for their benefit real property under a mortgage foreclosure sale, and to take title thereto upon the agreement that he should hold the same as security for what he might advance thereon, and, when plaintiffs repaid defendant his advances and a reasonable compensation for his services, he would convey the property to them. Relying upon this agreement, the plaintiffs did not provide other purchasers,

and defendant bid in the property at a sum very much less than its real value, and it was deeded to him.   The plaintiffs had title to and possession of the property before the foreclosure sale, and remained in possession after the sale, and made payments of money on account of the property.   The defendant subsequently acquired possession of the property, and refused to settle with the plaintiffs or convey the property to them, denied they had any interest in the property, and claimed he was the sole owner thereof.   Defendant's claim was based upon the statute against parol trusts (2 Rev. St. p. 134, § 6), but the court held that the plaintiffs were entitled to relief under section 10 of the statute, which declared that "nothing in this title contained shall be construed to abridge the powers of a court of equity to compel the specific performance of agreements in cases of part performance of such agreements"; and, after referring to and discussing many cases, the opinion closed with the following language:

"Where one of the parties to a contract void by the statute of frauds avails himself of its invalidity, but unconscientiously appropriates what he has acquired under it, equity will compel restitution; and it constitutes no objection to the claim that the opposite party may happen to secure the same practical benefit through the process of restitution, which would have resulted from the observance of the void agreement."

In the Kincaid Case the defendant, the father of the plaintiff, while the latter was still an infant, purchased a farm and some personal property, and paid for it himself, but had the same deeded to the defendant upon the verbal agreement that she would give him a life lease thereof.   After the defendant became of age, she took possession of the farm, excluded her father therefrom, and refused to give the life lease.   There was no fraud, mistake, or misapprehension as to the deed or the original agreement.   It was held that no trust resulted in favor of the plaintiff, and that the title vested in the defendant, but that that would not prevent the operation of any agreement that was good in law or equity, in part performance of which the deed was given, and that the statute was not intended to abridge the power of a court of equity to compel specific performance of a contract where there had been part performance thereof; citing and commenting on Ryan v. Dox, above, Smith v. Smith, 125 N. Y. 224, 26 N. E. 259, and Murphy v. Whitney, 140 N. Y. 541, 35 N. E. 930, 24 L. R. A. 123.   The decision of the Special Term, requiring the execution of the life lease by the daughter to the father, was affirmed in Fourth Department, General Term, Merwin, J., writing the opinion, and the affirmance by the Court of Appeals was on the same opinion. It appears, therefore, that the trial court decided the present case upon the theory of restitution or specific performance, as held in the Ryan-Dox and the Kincaid Cases.   The appellant's counsel seems to be incorrect in his statement that the decision was not placed upon the ground of a part performance of the verbal agreement, and relief granted upon that theory.   It was not held that the agreement was valid under the statute as a trust, but it was rather assumed that the agreement, being by parol, was invalid.   Nor was it found that a trust ex maleficio existed.   There was no fraud here at the time the agreement was made, as there was none in the Ryan-Dox and Kincaid

Cases. The agreement was made, however, and the defendant received title to the property thereunder, and, though the agreement was invalid, yet the defendant cannot be allowed to keep what he has acquired under it, and refuse to comply with his part of the agreement. We see no reason why the decision should not be supported upon the grounds the trial court placed it on.

As to the statute of limitations, it seems that no time was fixed by the agreement when it should be carried out, and the defendant did not repudiate the agreement, or refuse to carry it out, until about the time the action was brought. The trial court held that the agreement was a continuing one, and, as long as defendant recognized it, the statute would not commence to run; that it was optional with the defendant to take advantage of the statute of frauds or not. Until a breach of the agreement or repudiation thereof by the defendant, the plaintiff had no right to complain, and the statute of limitations would not commence to run. We think the trial court properly held the statute of limitations was not a bar to the action.

The views hereinbefore expressed lead to the conclusion that the judgment should be affirmed, with costs. All concur.