HURLEY, Respondent, vs. WALTER and wife, Interveners, Appellants.

*October 10—November 7, 1906.*

*Replevin: Intervention: Equitable issues: Right to jury trial: Waiver:
Bill of sale: Cancellation: Fraud: Oral trust: Enforcement:
Amendment of pleading: Appeal: Costs.*

1. Interveners in replevin claimed title under a bill of sale from
   plaintiff, and on their motion the court directed the complaint
   to be amended so as to make them defendants and charge them
   with setting up such claim. The amended complaint further
   alleged facts to show the alleged bill of sale invalid, and asked
   that it be set aside and plaintiff's title established. The inter-
   veners answered on the merits. *Held,* that the issues thus
   framed were equitable and that the interveners had waived any
   right which they might have had to a jury trial under sec. 2843,
   Stats. 1898.
2. Where, without fraud or mistake of fact, the owner of chattels
   executed a bill of sale transferring the title to another person,
   with the intention merely to empower the latter to pack and
   ship them, the court cannot set aside the instrument or convert
   it into a power of attorney merely because such person did not
   carry out the trust, although it may, under proper pleadings,
   enforce the trust.
3. Where, in such a case, the owner of the chattels had brought re-
   plevin for them against a carrier, and the vendee named in the
   bill of sale had intervened and claimed title, and plaintiff had
   thereupon asked to have the bill of sale set aside for fraud, the
   supreme court, on reversing a judgment for plaintiff on the
   ground that no fraud was proved, nevertheless authorizes the
   trial court to allow the complaint to be amended so as to raise
   the question whether the title had been placed in said vendee
   merely in trust.
4. In replevin against a carrier other claimants intervened, and
   the judgment, among other things, discharged the carrier from
   liability. On appeal from the whole judgment, no error being
   assigned as to that portion of it, and the carrier not having
   appeared, the judgment is affirmed as to the carrier without
   costs, under the discretion given by sec. 2949, Stats. 1898.

APPEAL from a judgment of the circuit court for Milwau-
kee county: J. C. LUDWIG, Circuit Judge. *Affirmed in part;
reversed in part.*

This was originally an action of replevin commenced by the plaintiff against the Chicago, Milwaukee & St. Paul Railway Company to recover possession of a quantity of surgical instruments, books, medicines, etc., which were in possession of the railway company at Milwaukee as common carrier, consigned to the intervener *Tillie Walter*. An affidavit for immediate delivery was made and an undertaking given, and the goods were seized and delivered to the plaintiff. The railway company answered, denying wrongful detention and denying knowledge as to plaintiff's ownership or right of possession, and alleging that it held the goods as common carrier, and that *Tillie Walter* was named as consignee. Subsequently the appellants, who are husband and wife, petitioned the court to be let in as defendants, claiming to be the owners of the property in question by virtue of a bill of sale made by plaintiff to the appellant *Alexander Walter,* and a second bill of sale by *Alexander* to *Tillie.* The court made an order allowing them to intervene and directing amendment of the summons and complaint.

By the second amended complaint the plaintiff alleged that prior to September 6, 1904, he was a physician in good practice at the city of Detroit and owned the property in question, and at about that time made an arrangement with the appellant *Alexander* (also a physician) to go into partnership with him and establish a sanitarium at Milwaukee and ship the goods in question to Milwaukee for use in the business; that it was agreed that *Hurley* should go to Milwaukee in advance to find a location, and that *Alexander* should remain in Detroit for a time and crate, pack, and ship the goods, and that *Hurley* should give *Alexander* written authority empowering him to so handle and ship the goods; that they went to a lawyer's office to execute an agreement of partnership and a paper authorizing *Alexander* to pack and ship the goods; that plaintiff was unable to read without glasses, owing to an infirmity of the eyes, and had broken his glasses, and that the

appellant *Walter* falsely and fraudulently induced him to sign a bill of sale of the goods, representing that it was simply a paper authorizing him to pack and ship the same; that there was no consideration for the bill of sale; that *Alexander* afterwards, without consideration, pretended to convey the goods to the appellant *Tillie*. Judgment was demanded setting aside the bill of sale and declaring the same a power of attorney, and that plaintiff's right in the property be established, and for such other relief as should be just and equitable. To this complaint the interveners answered, denying plaintiff's ownership of the property, and claiming that the goods were actually sold by the plaintiff to the intervener *Alexander,* and by him sold to his wife, *Tillie*.

The case came on for trial, and the interveners demanded a jury trial, but the demand was overruled and the case tried by the court. The plaintiff's witnesses were examined, but the interveners offered no testimony except the bill of sale from *Alexander* to *Tillie*. The court made findings of fact in effect finding the original ownership of the property, the agreement to form a partnership, and the agreement to give *Alexander* authority to pack and ship the goods, substantially as alleged in the complaint. The court further found that the plaintiff signed the bill of sale with the intention of authorizing *Alexander* to pack and ship the goods, and that it was entirely without consideration. As conclusions of law the court found that a title to the goods was in the plaintiff, that the bill of sale was in fact a power of attorney, that the plaintiff had the right of possession of the same and should recover costs of the interveners. Judgment was entered in accordance with the finding in favor of the plaintiff and against the interveners, and discharging the railway company from any further liability, and the interveners appeal.

For the appellants there was a brief by *W. E. & F. P. Burke,* and oral argument by *W. E. Burke.*

For the respondent there was a brief by *Schwefel & Knoell,* and oral argument by *A. G. Schwefel.*

WINSLOW, J.    The appellants' first contention is that it was error to refuse a jury trial.    An issue of fact in an ordinary replevin action is, of course, an issue for the jury.    Sec. 2843, Stats. 1898.    Whether it remains a jury issue after the original defendant has brought the property into court and procured the substitution of a rival claimant as defendant under the last clause of sec. 2610, Stats. 1898, may be a question open to doubt.    It has been held in New York, under a similar statute, that in an action on an insurance policy, where the original defendant has brought the money into court and a rival claimant has been substituted as defendant, the action becomes an equitable one in the nature of the old action of interpleader. _Clark v. Mosher,_ 107 N. Y. 118, 14 N. E. 96.    The present case, however, was not a case of substitution of a rival claimant upon deposit of the fund or property in court, but simply a case under the first clause of the section cited, where third parties on their own application and for the protection of their alleged interests in the subject matter of the controversy were interpleaded as additional defendants, the original defendant being still before the court.    It is very apparent that, under the broad provisions of this section, equitable claims of various kinds may be injected into an action at law, and that the proper method of disposition of the issues so raised may not be free from doubt and difficulty.    We do not think, however, that we are obliged to enter this field in the case before us.

If it be conceded that the interveners originally had a right to a jury trial, they could waive that right if they chose, and we think they have effectually done so in this case.    The order of intervention made upon the motion of the interveners required the plaintiff to amend his summons and complaint so as to make the interveners defendants, "with apt words to charge them as setting up such claim as their petition sets forth, as plaintiff may be advised," and gave the interveners the usual time after service to answer such amended complaint.    The petition of the interveners set

forth title under the bill of sale, and thus by the order of intervention the plaintiff was required to set forth in an amended complaint the interveners' claim under the bill of sale, and he must *ex necessitate* meet that title and show by his complaint that it was invalid, by other allegations in his complaint, or be turned out of court. He did this by serving a complaint which is unmistakably a complaint in equity, asking for the setting aside of the instrument and the quieting of the interveners' claim of title. To this complaint in equity the interveners made answer upon the merits, thus forming an equitable issue by consent. It appears by the recitals of the findings that when the case was called for trial all parties, including the railway company, appeared by their respective counsel, and that the counsel for the railway claimed that, the property having been delivered to the plaintiff and the consignee having become a party defendant, "the case should proceed upon the issues in said action between the plaintiff and the interpleaded defendants, and this idea was acquiesced in by all concerned," whereupon the case proceeded to trial. The issues between the plaintiff and the interveners, as they had been framed, were distinctly equitable issues, and we think that under the facts stated the interveners had waived any right which they might have had to a jury trial and consented that the action should be treated and tried as an action in equity.

The question remains, however, whether any fraud was proven sufficient to justify the cancellation of the bill of sale. The complaint charged substantially that the bill was signed by the plaintiff without knowledge of its contents, relying upon fraudulent representations as to its character made by *Walter*, and under circumstances excusing the plaintiff's neglect to read it. The evidence of the plaintiff himself, however, showed beyond question that he knew he was signing a paper purporting to put the title of the property in *Walter;* but he insists that it was simply done so that it would appear

that *Walter* owned the goods, in order that he would have no
trouble in packing and shipping them.   In accordance with
this testimony the court found neither fraudulent representa-
tions as to the character of the instrument by *Walter,* nor
ignorance of its character by the plaintiff, but simply that
plaintiff signed it with the intention of empowering *Walter*
to pack and ship the property, that there was no considera-
tion paid, and hence that the instrument was in fact simply
a power of attorney.   We have been unable to follow the trial
court to the conclusion reached.   If without fraud or mis-
take of fact the plaintiff deliberately chose to execute an in-
strument transferring the title of his property to *Walter,* in
trust for certain purposes, the court cannot set aside the in-
strument or convert it into a power of attorney because *Wal-
ter* did not carry out his trust.   A valid trust in personal
property may be created by parol.   1 Perry, Trusts, § 86.
If the title was placed in *Walter* simply in trust for certain
purposes, doubtless *Walter* may be compelled to carry out his
agreement, and the trust may be enforced under proper plead-
ings; but no such contention was made by the pleadings. The
only issue raised or tried was the issue of fraud, and on this
the plaintiff has failed.

This conclusion necessitates reversal of the judgment.   We
are not inclined, however, to direct judgment without giving
the plaintiff opportunity to try the real question in the case.
No reason is perceived why the question as to the creation of
a trust in the property may not be tried out in this action,
and the mandate will so provide.   The judgment discharges
the railway company from further liability, and the notice of
appeal served upon the railway company as well as upon the
plaintiff states that the appeal is taken from the whole judg-
ment.   No assignment of error, however, is made or argued
upon this part of the judgment, hence, as to the railway com-
pany, the judgment will be affirmed.   The railway company
did not appear in this court, and the affirmance will be with-

out costs, under the discretion given to this court by sec. 2949, Stats. 1898, in cases where the judgment is affirmed as to some parties and reversed as to others.

*By the Court.*—That portion of the judgment discharging the defendant railway company from liability is affirmed, without costs; the remainder of the judgment is reversed, with costs, and the cause remanded with directions to enter judgment dismissing the complaint unless the trial court, upon notice and application made within thirty days after service of notice of the *remittitur* herein, shall in its discretion, and upon such terms as may be just and equitable, grant leave to the plaintiff to amend his complaint so as to raise the question of trust as indicated in the opinion, in which case a new trial shall be had.