Argued July 1, decided July 15, 1913.

# GRAY *v.* BEARD.

### (133 Pac. 791.)

**Trusts—Conveyance by Cestui to Trustee—Effect—Termination of Trust.**

1. Where decedent conveyed certain property to defendant in trust, so that the property might not stand of record in decedent's name, and had defendant execute a return deed, which was not recorded, the fact that decedent thereafter executed another deed to defendant for the same property, and dated the same back solely for the purpose of lodging in defendant a complete record title, did not terminate the trust nor relieve defendant of his obligations as trustee with reference to the property.

**Deeds—Construction—Antedating.**

2. Where parties deliberately antedate a deed, or otherwise manifest an intention that it shall speak from its date, the courts will give effect to their intention.

**Trusts—Conveyance of Real Property—Enforcement—Creditors.**

3. Where decedent executed deeds to certain land to defendant in trust for himself, without any intent to escape any just obligation, and there was no creditor or just claimant whose rights or interests would be prejudiced, the trust would be enforced.

**Trusts—Part Performance.**

4. Where defendant received property in question in trust for decedent, with other parcels of real estate which had been sold and conveyed by defendant at decedent's dictation, and the proceeds had been turned over to the latter, thereby executing the trust in part, a resulting trust was established which was not within the statute of frauds.

[As to the effect of the statute of frauds on trusts fully executed, see note in Ann. Cas. 1913A, 954.]

**Trusts—Creation—Evidence—Conduct of Parties.**

5. Continued exercise of acts of dominion over real property by a *cestui que trust*, with notice to the trustee and without protest from him, is sufficient to establish the existence of the trust.

**Trusts—Resulting Trust—Conveyance Without Consideration.**

6. A resulting trust may arise where a conveyance is made without consideration and it appears from the circumstances that the grantee was not intended to take beneficially.

[As to when a trust results in favor of a husband or wife who pays the purchase price of land and takes title in the name of the other spouse, see note in 127 Am. St. Rep. 252. As to right to jury trial in action to declare a resulting trust, see note in Ann. Cas. 1913C, 153.]

Trusts—Express Trust—Evidence—Declarations—Circumstances.

7. An express trust may be proved, not only by express declarations, but also by circumstances from which its existence may be inferred, for which purpose evidence of acts and declarations of the parties, oral or written, as well as the surrounding circumstances, is admissible.

[As to proof of express trusts by written declarations, see note in Ann. Cas. 1913B, 1023.]

Trusts—Resulting Trust—Denial—Burden of Proof.

8. Where defendant relies on a voluntary conveyance from a near relative as absolute, and a *prima facie* case of trust is established against him, and the attendant facts and circumstances and the means of disclosure and explanation are peculiarly within the defendant's cognizance, the burden is on him to show an entire good faith in the transaction, and to prove his title.

From Multnomah: Henry E. McGinn, Judge.

This is a suit by Mary B. Gray and S. Roscoe Beard against A. Edgar Beard, to establish title in plaintiffs to an undivided two-fifths interest in certain real property in Multnomah County. The facts are fully set forth in the opinion. The Circuit Court found the equities were with the plaintiffs and entered a decree accordingly, from which the defendant appeals.

Affirmed.

For appellant there was a brief over the names of *Messrs. Griffith, Leiter & Allen,* and *Mr. Isham N. Smith,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondents there was a brief over the names of *Messrs. Snow & McCamant,* with an oral argument by *Mr. Wallace McCamant.*

Mr. Justice Bean delivered the opinion of the court.

S. M. Beard died intestate on January 8, 1910, leaving as residuary legatees, Elizabeth Beard, a sister in law, and the mother of the other residuary legatees, viz., Mary B. Gray and S. Roscoe Beard, plaintiffs, and A. Edgar Beard, defendant; also Carrie E. Cadwell

(*née* Carrie E. Beard). Plaintiffs claim that defendant, A. Edgar Beard, held the property in trust for his uncle, S. M. Beard, deceased. Defendant claims to own the property individually. The suit involves lot 2 B, and the east 37½ feet of lot 3, all in block I of Tabor Heights Addition to the City of Portland, and 41.12 acres in sections 9 and 10, township 1, south of range 2, east of the Willamette meridian, known as the Kelly Butte property.

S. M. Beard, deceased, for several years was president of a bank at Vancouver, Washington, prior to 1906, at which time he sold his interest in the same. He was a thrifty, painstaking business man, and in one of his letters he stated that he lived on less than $25 per month. He was not considered an immoral man, but the evidence indicates that he was unable to discriminate between a worthy and a designing woman. His first wife died, leaving no children. He was married the second time on August 18, 1898, and divorced in January, 1899. In August, 1904, he was married the third time, and divorced in February, 1905. A fourth marriage took place in February, 1909, with a following divorce in May, 1909. It is claimed by plaintiffs that, by reason of his several marriages and divorces, and the fear that some woman might endeavor to obtain a large part of his property, it was his practice to keep much of his property standing on the records in the names of several different persons, who held the same in trust for him.

In December, 1901, S. M. Beard organized the Beard Fruit Company, for the purpose of holding title to his valuable properties in Clarke County, Washington. A. Edgar Beard was a nephew of the decedent. The record shows that his uncle had implicit confidence in him. On the 22d of July, 1897, S. M. Beard was the owner of a one-half interest in lots

3 and 2 B, in block I of Tabor Heights, and also of
certain lots and blocks in the Eden tract.   On that date *\'7 /*
he executed a deed to this property in favor of the
defendant, which was placed of record.   The prop-
erty in Eden was subsequently sold, A. Edgar Beard
executing the deeds therefor, and S. M. Beard receiv-
ing the proceeds of the property.   In 1902, at the in-
stance of S. M. Beard, there was a partition of the
Tabor Heights property, the decedent securing title
in the name of A. Edgar Beard to lot 2 B, and the east
37½ feet of lot 3, in block I, and W. L. Kauffman, the
owner of the other half interest, receiving the re-
mainder of the property.   The taxes on the Tabor
Heights property continued to be paid by S. M. Beard
as long as he lived.   In recognition of the trust in
favor of S. M. Beard in the Tabor Heights and Eden
property, A. Edgar Beard, on the ―― day of ―――――,
1897, executed a deed thereof to S. M. Beard.   This
deed was acknowledged on the 19th day of March, 1898,
and about the year 1899 was given by S. M. Beard to
Mrs. Gray for safekeeping.   After the death of S. M.
Beard, when the defendant for the first time asserted
title to the Tabor Heights property, this deed was placed
of record.   In June, 1903, as contended by the plain-
tiffs, the decedent had specific reasons for fearing
blackmail.   On the 22d of June, 1903, as it is claimed
by A. Edgar Beard, S. M. Beard was in need of money,
and he loaned him $5,000, exacting as security 10
shares of stock in the Beard Fruit Company standing
in the name of S. M. Beard.   The defendant contends
that on the following day S. M. Beard presented him
with the Kelly Butte property described in the com-
plaint.   It is conceded by defendant that no considera-
tion was paid for such conveyance executed on June
23, 1903.   The fact that the deed was executed and
delivered was admitted by the pleadings.   This Kelly

Butte property had been purchased in 1890 by a syndi-
cate consisting of S. M. Beard and several United
States army officers for the sum of $30,400.   On the
23d of June, 1904, there was a mortgage on the prop-
erty for $6,250.   This mortgage had been originally
$25,000.   It had been whittled down from time to time,
and payments continued to be made by S. M. Beard
until the balance of $5,451.70 was paid in full on the
8th day of February, 1906.   When the property was
purchased by the syndicate, the title was taken in the
name of S. M. Beard, and he executed the note and
mortgage for $25,000 to Mr. McDaniel.   The syndicate
of army officers failed to make their share of the pay-
ments for the property, with the exception of S. Mc-
Conihe.   On the 10th day of October, 1902, a settlement
was had between S. M. Beard and Col. McConihe, by
which S. M. Beard retained 101.12 acres of the prop-
erty as his own, which he valued at that time at
$22,793.76.   On the 12th of August, 1904, it appears
that the decedent valued this property at $14,028.10.
The decedent carried this property through all the
hard times of 1903, paid all the taxes thereon, which
was quite a burden, and cared for the same.   It was his
custom at the first of each year to make out an in-
ventory of his property, showing its valuation, together
with his liabilities.   Five of these inventories are in
evidence, bearing dates from January 1, 1893, to Janu-
ary 1, 1910.   The last inventory shows the property
in dispute listed as S. M. Beard's, as follows:

|  | Selling. | Conserva-tive. |
|---|---|---|
| 62½x160 feet, lot Tabor Heights | $ 2,500 | $2,000 |
| 41.12 acres Kelly Butte | 16,000 | 8,000 |

It is signed by S. M. Beard.   The inventories of
January 16, 1909, and of January 1, 1910, mention the
property of Mary B. Gray separately from that of
S. M. Beard, minutely describing the same.   The latter

inventory directs where the abstracts of title to different parcels of property, and other valuable papers, may be found in the bank and elsewhere. The decedent had heart trouble, and this last inventory clearly appears to be for the information of those who might transact the business of his estate after his death. These several inventories which appear in the handwriting of the decedent were made with much care, and the earlier ones include as liabilities the amount owing for the property in question. It is inconceivable why a man in his condition of life, who had executed a will in favor of his relatives, and apparently did not expect to enjoy his property for a very long time, should make out a false inventory. The last inventory shows the amount of $137,051, as a conservative value of his property, with liabilities amounting to $1,600, being one note and street improvements.

1. When S. M. Beard took title to the property belonging to the syndicate, he signed declarations of trust, which were given to the several individuals, in which it was declared that they might be transferred by indorsement. These, with the assignments and releases thereof, were all carefully collected from the different members of the syndicate, or other transferees. At the time they were placed of record, in 1904, Mr. Dabney, as attorney for S. M. Beard, had him execute a deed to A. Edgar Beard of the same property he had conveyed as trustee on June 23, 1903, and dated the deed back to the last-named date. This was done in order to straighten the title, which had, prior to the settlement with the other members of the syndicate, been held by S. M. Beard as trustee. It is contended by defendant's counsel that this individual deed of S. M. Beard confirmed the title in A. Edgar Beard and terminated the trust, if any. A conveyance from *cestui que trust* to trustee, if executed solely for the purpose of lodging with the trustee a complete rec-

ord title, will not terminate the trust or relieve the trustee of his obligations: *Jenkins* v. *Eldredge,* 13 Fed. Cas. 462, 493; *Broder* v. *Conklin,* 77 Cal. 330 (19 Pac. 513).

2. And where the parties deliberately antedate a deed, or otherwise manifest an intention that it shall speak from its date, the courts will give effect to their intention: *Cummings* v. *Newell,* 86 Minn. 130 (90 N. W. 311).

It appears that S. M. Beard also executed a declaration of trust to A. Edgar Beard for his interest in the Eden property, and that he usually kept some memorandum of real property held in trust by himself and others. However, he appeared to rely upon an unrecorded certificate as much as upon a duly recorded conveyance of real estate.

The plaintiffs allege in their complaint, and the lower court found, that a deed had been executed by A. Edgar Beard in favor of S. M. Beard, which recognized S. M. Beard's equitable title to the Kelly Butte property. S. M. Beard wrote to A. Edgar Beard under date of November 23, 1903, transmitting a deed for execution by the latter. No answer to this letter was found among the papers of the decedent, nor was the deed itself found. When S. M. Beard died the defendant took possession of a number of the decedent's papers, and a few weeks later took possession of the remainder, with the exception of a few which Mrs. Gray had had for several years. These papers were kept by the defendant until January, 1911, the possession of which was secured through proceedings in the county court by the efforts of S. Roscoe Beard, executor, and Mary B. Gray, then executrix of S. M. Beard's estate. S. M. Beard continued to exercise dominion over the Kelly Butte property after the deed of June 23, 1903, up to the time of his death. During

that time A. Edgar Beard never asserted ownership over the property. A portion of the land was platted as the Multnomah Berry Ranch by S. M. Beard, and several lots were sold subsequently to June 23, 1903. The money arising from these sales was paid to S. M. Beard, and the prices for which the property was sold were fixed by him. Interest on the mortgage held by Mr. McDaniel was also paid by S. M. Beard, as well as the principal. For this purpose he borrowed money on his own note. It is in evidence that A. Edgar Beard stated to H. G. Patterson and O. L. Price that he had no interest in the property, but that S. M. Beard was the owner thereof. It is shown that A. Edgar Beard was familiar with the inventories of 1908 and 1909, including the property in question, and showing that S. M. Beard owned the same, and that he made no protest nor claim of ownership to the land.

Subsequently to the death of S. M. Beard, and while the defendant was executor of the decedent's estate, he placed of record a mortgage for $5,000 on the Kelly Butte property in favor of one S. H. Bell. This mortgage was not given for any consideration. A release of the same was executed by Mr. Bell in favor of the defendant. This the latter, up to the time of the trial, had not placed of record. The defendant states in his cross-examination upon this subject: "I put the mortgage on record so that you could not get it and tie it up." It appears that S. M. Beard at different times owned real property, the title to which was held in the name of the Beard Fruit Company, Mary B. Gray, A. Edgar Beard, and others.

3. While the decedent was in active business he held property in trust for several other persons, and it does not seem strange that he should convey his own property to his relatives in trust. Whether or not his fears of being overreached by some woman were well

founded does not change the situation. It does not appear that S. M. Beard executed the deed of July 22, 1897, or the deed of June 23, 1903, for the purpose of escaping any just obligation. There was no creditor or just claimant whose rights or interests could be prejudiced in the matter: *Rivera* v. *White,* 94 Tex. 538 (63 S. W. 125); *Odell* v. *Moss,* 137 Cal. 542 (70 Pac. 547).

We have read the evidence carefully, and have examined the several exhibits contained in the record. This is a family affair, and an extended recitation or discussion of the testimony would be of no advantage to anyone. Suffice it to say that the proofs are convincing, and clearly preponderate in favor of the plaintiffs.

4. It is contended by counsel for the defendant that there is no evidence to sustain the allegation in the complaint of an express trust, because an express trust must be shown by a writing. The defendant, A. Edgar Beard, received the property in question in trust for S. M. Beard, together with other parcels of real estate which had been sold and conveyed by A. Edgar Beard at the dictation of S. M. Beard, and the proceeds thereof turned over to the latter thereby executing the trust in part. A fiduciary relation is therefore shown to have existed between the defendant and the decedent.

5. There was no open breach of the trust until after the death of S. M. Beard. The partial performance of the trust takes the same out of the statute of frauds. Continued exercise of acts of dominion over real property by the *cestui que trust,* with notice to the trustee, as was given to A. Edgar Beard, and without protest from him, established the existence of the trust: *Kollock* v. *Bennett,* 53 Or. 395, 401 (100 Pac. 940, 133 Am. St. Rep. 840); *Greenley* v. *Shelmidine,* 83 App. Div.

559 (82 N. Y. Supp. 176); *Bork* v. *Martin,* 132 N. Y.
280 (30 N. E. 584, 28 Am. St. Rep. 570); *Broder* v.
*Conklin,* 77 Cal. 330 (19 Pac. 513).

6. It is a salutary maxim that the statute against
frauds cannot be used as a cover for fraud.   The com-
plaint also sets forth in detail circumstances which
show that there was no gift intended, but that, on the
contrary, a trust arose in favor of the grantor on the
execution of these deeds.   A resulting trust may arise
where a conveyance is made without any consideration,
and it appears from the circumstances that the gran-
tee was not intended to take beneficially: Bispham,
Prin. Eq., § 79; *Bennett* v. *Hutson,* 33 Ark. 762; *Gay* v.
*Hunt,* 5 N. C. 141 (3 Am. Dec. 681); *Williams* v. *Will-
iams,* 108 Iowa, 91 (78 N. W. 792); *Lingenfelter* v.
*Ritchey,* 58 Pa. 485 (98 Am. Dec. 308).

The rule is stated in 39 Cyc. 60, as follows:

"Although real or personal property is transferred
by a conveyance absolute in form, the transfer may be
held to have been made in trust and the grantee to be
a trustee, where the prior or contemporaneous acts,
declarations, and agreements of the parties evidence
an intent and understanding that the grantee was to
take and hold the property for a trust purpose (citing
*Coffin* v. *Argo,* 134 Ill. 276 [24 N. E. 1068]; *Van Patten*
v. *Campbell,* 59 N. J. Eq. 653 [49 Atl. 1070]; *Briden-
becker* v. *Lowell,* 32 Barb. [N. Y.] 9; *Hunter* v. *Hunter,*
17 Barb. [N. Y.] 25; *Hurley* v. *Walter,* 129 Wis. 508
[109 N. W. 558]).   It is not permissible, however, for
one who has made an absolute conveyance of property
to fasten a trust thereon by his own subsequent acts
and declarations alone, although such subsequent acts
and declarations are sometimes considered in connec-
tion with prior and contemporaneous ones in determin-
ing whether or not a trust exists, and there is no
objection to the grantee subsequently declaring that he
holds in trust.   Within the meaning of the rules just
stated, the facts and circumstances surrounding many

absolute conveyances have been held insufficient to disclose a trust.''

7. The general rule is that an express trust may be proved, not only by express declarations, but also by circumstances from which its existence may be inferred, and to this end evidence of the acts and declarations, either oral or written, of the parties, as well as the surrounding circumstances, may be admitted and considered: 39 Cyc. 80; *Kendrick* v. *Ray,* 173 Mass. 305 (53 N. E. 823, 73 Am. St. Rep. 289); *Barker* v. *Smith,* 92 Mich. 336 (52 N. W. 723); *Starbuck* v. *Farmers' L. & T. Co.,* 28 App. Div. 272 (51 N. Y. Supp. 58); *Drew* v. *Corliss,* 65 Vt. 650 (27 Atl. 613).

At the time S. M. Beard executed the deed of July 22, 1897, to the Eden and Tabor Heights property he prepared and forwarded to A. Edgar Beard an exact duplicate of that deed, except that the day and month were left blank, and the names of the grantor and grantee were reversed. This deed, however, was not acknowledged by A. Edgar Beard until the 19th day of March, 1898, and is the one referred to as having been recorded after the death of S. M. Beard. This deed defendant claims was executed as a mortgage and left with his father, so that in case of defendant's death it would secure the payment of the sum of $1,000 to S. M. Beard. This is not, however, substantiated by the evidence. The manner in which S. M. Beard carried on his business, and all the facts and circumstances of the case, indicate very strongly that at the time he executed the deed of the Kelly Butte property to A. Edgar Beard on June 23, 1903, he required and obtained a reconveyance from A. Edgar Beard to himself, but never recorded the same. The Circuit Court so found.

8. Where the defendant relies upon a voluntary conveyance from a near relative, such as a confiding uncle,

and a *prima facie* case is made out against him, showing that the property conveyed is held by him in trust, and the attendant facts and circumstances and the means of disclosure and explanation are peculiarly within the defendant's cognizance, it devolves upon him to show an entire good faith in the transaction, and prove his title. This the defendant has failed to do: *Schwartz* v. *Gerhardt,* 44 Or. 425, 432 (75 Pac. 698); *Mendenhall* v. *Elwert,* 36 Or. 375, 384 (52 Pac. 22, 59 Pac. 805); *Garnier* v. *Wheeler,* 40 Or. 198, 201 (66 Pac. 812); *Goodale* v. *Wheeler,* 41 Or. 190, 197 (68 Pac. 753); *Livesley* v. *Heise,* 48 Or. 147, 152 (85 Pac. 509).

The findings of the trial court were, in substance, correct. It follows that the decree of the lower court should be affirmed, and it is so ordered.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.